# Indemnity Insurance Company of North America v. Lee

## (Two Cases).

(Decided January 28, 1930.)

W. A. BERRY for appellant.

JACK E. FISHER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

By agreement of parties, and for the convenience of the court, these two appeals growing out of the same facts, and involving the same questions of law, will be considered in one opinion.

Pat Cooper, a resident of Paducah, was the owner of a Dodge touring car. On May 31, 1928, the Indemnity Insurance Company of North America issued to him a policy by which it insured him for a period of one year against liability for personal injuries caused by the car to other persons within the limits of the United States.

In section (a) of the policy the company obligated itself as follows:

"To pay, within the limits specified in the Declarations, any loss by reason of the liability imposed by law upon the Assured for such bodily injuries or death so resulting;"

"To defend, in the name and on behalf of the Assured, all claims or suits for such injuries for which the Assured is, or is alleged to be, liable;"

"To pay all costs and expenses incurred with the Company's written consent;"

"To pay all court costs taxed against the Assured in any such suit, including the premiums on attachment and/or appeal bonds required in any such proceedings;"

"To pay all interest accruing upon any judgment in any such suit up to the date of the payment or tender to the judgment creditor, or his Attorney of record, of the amount for which the Company is liable."

Other provisions of the policy are as follows:

"It is hereby understood and agreed, unless limited by indorsement attached hereto, that this policy is extended to cover as additional Assured any person or persons while riding in or legally operating any automobile described in the Declarations and any person, firm or corporation, legally responsible for the operation thereof (excepting always a public garage, automobile repair shop and/or sales agency and/or service station and agents and employees thereof), provided such use or operation is with the permission of the named Assured or, if the named Assured is an individual, with the permission of an adult member of the Assured's household other than a chauffeur or domestic servant. In no event shall the extension of insurance herein provided be considered to cover the purchaser of any automobile described herein if sold, or a transferee or assignee of this policy except by the direct consent of the Company in the manner indicated in Condition H of this policy."

"In the event of the bankruptcy or insolvency of the Assured, the Company shall not be released

from the payment of such indemnity hereunder as would have been payable but for such bankruptcy or insolvency. If, because of such bankruptcy or insolvency an execution against the Assured is returned unsatisfied in an action brought by the injured, or by another person claiming by, through or under the injured, then an action may be maintained by the injured, or by such other person against the Company under the terms of this Policy for the amount of the judgment in said action, not exceeding the amount of this policy.''

Item 9 of the declaration, indorsed on and made a part of the policy, reads as follows:

''None of the automobiles herein described are or will be rented to others, or used to carry passengers for a consideration during the period of this policy.''

On July 1, 1928, Pat Cooper, the insured, left Paducah for Detroit, Mich., for the purpose of trading his Dodge touring car for a new car. He was accompanied on the trip by his son-in-law, M. F. Lee, his wife, Louise Lee, and their little child, and also by Charles Humphreys, Jack Hopkins, and Francis Gardner. At a point in Illinois the car that Cooper was driving collided with another car, and M. F. Lee and his wife were injured. Some time later M. F. Lee and Louise Lee filed separate actions against Cooper to recover damages, each alleging that the injuries were due to his negligence. Though the indemnity company received notice not only of the accident but of the filing and pendency of the suits, it refused to defend. The suits proceeded, and each of the Lees recovered a judgment for $1,500 and costs. Thereafter an execution issued on the judgment in each action and was returned ''No property found.'' Thereupon the Lees brought separate actions against the indemnity company to recover on the judgments. They each alleged the negligence of Cooper, the recovery of the judgment, Cooper's insolvency, the issuance of the execution, and the return of ''No property found.''

In each case the company defended on the ground that the judgment was obtained by fraud and collusion, and on the further ground that the Lees and the other occupants of the car had agreed to furnish the gasoline for the trip, and that at the time of the accident Cooper

was using the car to carry passengers for a considera-
tion. The court refused to submit the question of fraud
and collusion to the jury, but gave an instruction telling
the jury in substance that, if they believed from the evi-
dence at the time of the accident Cooper was using the
car to carry passengers for a consideration, they should
find for the defendant. From a judgment in each case
in favor of plaintiff the two appeals are prosecuted.

The failure of the court to instruct on fraud and
collusion is the first ground urged for reversal. On this
question Cooper testified that he did not know the suits
were to be brought against him. The first he knew of
it was when they sued him. After the suits were brought,
he informed the company. He then received a letter
from the company's attorney stating that the company
would not defend. The only reason he did not defend
was that he had the policy and depended on the company.
He never agreed with the Lees not to file an answer, or
as to anything else. Both the Lees also testified that
nothing was said to Cooper about filing the suits, and
there was no agreement between them that Cooper would
not file an answer. If the case were one where the
insured, without notifying the company of the suits, had
permitted his daughter and son-in-law to procure judg-
ments without making defense, the facts might justify
the inference of collusion, but, inasmuch as the company
had agreed in the policy to defend all suits in the name
and on behalf of the assured, and had been notified of
the pendency of the suits, it hardly can be said that the
relationship of the parties and his failure to defend was
sufficient evidence of collusion to take the case to the
jury. We therefore conclude that the court did not err
in refusing to give the offered instruction.

Another contention is that the evidence that the
Lees and others agreed to furnish the gasoline on the
trip was so conclusive that the verdict of the jury is
flagrantly against the evidence. To support this posi-
tion, the company introduced Cooper and M. F. Lee.
There was presented to Cooper a lengthy statement
signed by him, which, after giving a detailed account of
the trip and accident, concluded with these words: "That
at the time Cooper was driving to Detroit, Michigan,
with the intention of purchasing a new car, and these
people were going with him, the said Lee, Hopkins,
Humphreys and Gardner agreeing to join in and pay for
the gasoline." Though admitting his signature, Cooper

testified that he never made the statement, that not a word was said to him about their paying the expenses, and that he never saw or heard tell of them until the evening before they started. In conclusion, Cooper stated that he never had any agreement with them. When M. F. Lee was on the stand, he was confronted by a statement composed of questions and answers taken down and transcribed by a stenographer. The paper concludes with the following question and answer:

"Q. Where was Pat Cooper going? A. He was going to Detroit to buy a new car, and Mr. Hopkins, Mr. Humphreys, Mr. Gardner and myself, it was understood would all throw in and help buy the gasoline and that was all the expense either of us was to be put to."

It was shown by the stenographer and company's attorney that the statement was made and signed by Lee. Lee admitted that he signed the paper, and testified that he believed Mr. Berry misunderstood him on part of the questions. That part of the statement about expense was not true. On being recalled, he said that the attorney asked if anything to eat had been bought, and he said nothing had been, but that a man would be awfully close to ride that far free of charge. The attorney said, "All right, I will put that down as part of the expenses." The statement was then written out, and he signed it. Mrs. Lee also testified that not a thing was said about furnishing the gasoline. It may be that, if Cooper had agreed with the Lees and others accompanying him on the trip to take them along in consideration of their paying for the gasoline, the case would be one where the car was being "used to carry passengers for a consideration," but it not infrequently happens that guests on a long trip, without any agreement whatever with the owner, have an understanding among themselves that they will pay for gasoline, or pay for it without such understanding, because they do not feel like accepting so great a favor without contributing something to the expense, and, where this is the case, they cannot be regarded as passengers for a consideration. The statement that Cooper signed does not say that the Lees and others agreed with him to buy the gasoline, and the statement of Lee is susceptible of the construction that understanding was between him and the others, and not between them and Cooper. When called on to explain

the statement, both Cooper and Lee say that as a matter of fact there was no such agreement, and Mrs. Lee testifies to the same effect. In view of the fact that they were both engaged in telling the details of the accident, and may not have fully understood the statements attributed to them, we are not prepared to say as a matter of law, in the light of their explanation, and their and Mrs. Lee's positive testimony to the effect that no such agreement was made with Cooper, that the jury should have accepted the statements as true, and that their finding is flagrantly against the evidence.

Judgment affirmed.