### WHEELER v. LUMBERMEN'S MUT. CASUALTY CO. et al.

District Court, D. Maine, S. D.
Nov. 29, 1933.

Berman & Berman, of Lewiston, Me., for plaintiff.

Robinson & Richardson and N. W. Thompson, all of Portland, Me., for defendants.

PETERS, District Judge.

This is a bill in equity brought under chapter 60, §§ 177–180, of the Revised Statutes of

Maine, to reach and apply certain insurance money under a policy of automobile liability insurance issued by the defendant insurance company to the Lewiston Monumental Works, so-called.

The principal defense against the action is that the policy was breached by the assured by the violation of a certain condition therein to the effect that the assured would co-operate with the insurer in defending any suit that should be brought on account of an accident covered by the policy. It is also claimed that the policy was void by reason of a stipulation that it should become so if the assured should conceal or misrepresent any material fact or attempt to defraud the insurance company. Other defenses are that the automobile involved in the accident was not covered by the policy, and that the plaintiff is estopped by his acts and representations from asserting his claim against the insurance company.

### Findings of Fact.

The insurance policy in question, issued by the defendant Lumbermen's Mutual Casualty Company, on April 23, 1932, to Lewiston Monumental Works, as the assured named, was of the usual liability type, undertaking to indemnify the assured against liability for damages recoverable on account of accidents occurring "as a result of the ownership, maintenance or use" of certain automobiles described therein.

The name Lewiston Monumental Works was a trade-name used by Honora G. Murphy of Lewiston, under which she had been carrying on business, with the active assistance of her sons, since at least 1923, when she filed with the city clerk of Lewiston a certificate to that effect, as required by law. The same business at the same location previously for a long time had been carried on by the husband of Mrs. Murphy before his death under the name of James P. Murphy Company, which business name was also used by Honora G. Murphy to some extent down to and at the time of the accident, as well as the name Lewiston Monumental Works. Both names were conspicuous on signs attached to the place of business.

The insurance policy in question contains the following clauses pertinent to the issues raised:

"In consideration of the deposit premium herein provided the Lumbermens Mutual Casualty Company (hereinafter called the Company) does hereby agree with the assured named and described as such in the special conditions forming part hereof, as follows:

"To Pay on behalf of the assured, subject to all of the conditions of this policy, all sums which the assured shall become obligated to pay by reason of the liability imposed upon him by law for damages, * * * on account of bodily injuries * * * accidentally suffered or alleged to have been suffered by any person or persons, due to any accident as a result of the ownership, maintenance or use of the automobile described herein. * * *

"To Serve the assured, upon notice of such bodily injuries * * * (a) in investigating cases coming within the provisions of this policy, (b) in conducting negotiations for the settlement or in contesting any claims made on account of such cases, and (c) in defending any suit brought to recover damages on account of such cases, unless or until the company may elect to effect settlement of such suit. The Company is hereby constituted the agent of the assured in all matters pertaining to the investigation, adjustment and payment of claims for which the assured is liable."

"Cooperation of Assured.

"G. The assured when requested by the Company shall aid in effecting settlements, securing and giving evidence, the attendance of witnesses and in prosecuting appeals. The Assured shall not voluntarily assume any liability, settle any claim or incur any expense other than for immediate surgical relief, except at his own cost, or interfere in any negotiation or legal procedure without the consent of the Company previously given in writing."

"Misrepresentation and Fraud.

"I. This entire policy shall be void if the assured or his agent has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the Assured or his agent shall make any attempt to defraud the Company either before or after the loss.

"Exclusions.

"This policy shall not cover, in respect of any automobile * * * (5) accidents to any employee of the Named Assured or Assured (except household servants) while engaged in any business or occupation of the Named Assured or Assured or while engaged in the operation, maintenance or repair of any automobile described in this policy."

It was also provided in the policy that upon the happening of an accident covered by the policy the assured should give immediate written notice thereof with fullest informa-

tion obtainable at the time to the company or some authorized agent.

Several automobiles were described in the policy, one of which, while being driven by an employee of Honora G. Murphy (doing business as Lewiston Monumental Works, as above mentioned, and hereinafter referred to as the assured), on October 17, 1932, while being used in the assured's business, came in collision with a street car, and the driver, as well as the plaintiff, Wheeler, who was riding in the automobile at the time with the driver, sustained serious injuries.

On October 19th a report or notice of the accident, as required by the terms of the policy, was given by the assured to the insurance company, made out on a printed blank furnished for the purpose by the company. This blank, which is entitled "Report of Automobile Accident," contains certain printed questions which are to be answered by the assured in small spaces left for that purpose.

The present dispute between the parties originated in the wording of this report. The following are the parts of the report necessary to be considered:

*"Policy Holder:*

"Name: Lewiston Monumental Works. * * *

"Full address: 6 Bates Street. City: Lewiston. State: Maine.

*"Your Automobile, Driver and Occupants:*

"Name: Ford Tudor. * * *

"Name of Driver: Lawrence A. Murphy.

"Home address: 110½ Spring Street. Business address: 6 Bates Street.

"By whom employed? Lewiston Mon't. Works.

"How long? 25 years. Licensed? Yes.

"For what purpose was car being used? Conveyance to and from work in cemeteries.

"Passengers: (Names and addresses): Percy Wheeler, 2 Granite Street, Lewiston, Maine.

*"Personal Injuries:*

"Full name of injured person: Percy Wheeler. Address: 2 Granite Street. Age: 41. Married or single: Married. Nationality: Irish American. Color: White. Understand English? Yes.

"In whose employ? Lewiston Monumental Works. Wages: $48.00 per week.

"Statement of injured: "I saw what I supposed was an automobile with one light coming towards us, suddenly there was a crash, and the next thing I knew I was in the hospital.

"Heard by: Joseph J. Murphy. Address: 115 Spring Street, Lewiston.

"Nature and extent of injuries: See the attached paper.

"Where was injured person taken? C. M. G. Hospital. * * *"

On receipt of the notice of the accident, the agents of the insurer proceeded to Lewiston to investigate the matter. Naturally, the first question that interested them was the liability of their company. The policy provided, under the heading of "Exclusions," that it should not cover accidents to (a) an employee of the assured, (b) while engaged in the business of the assured. (The exact language is hereinabove quoted. I have made the separation which appears important.)

The agents had the report of the accident before them and saw that the injured person was therein said to be in the "employ" of the assured.

In the printed form of notice furnished by the insurance company there was no blank to be filled out and no question to be answered as to whether the injured person, if an employee of the assured, was also, at the time of the accident, "engaged in any business or occupation of the Named Assured or Assured."

An agent of the company made inquiries at the office of the assured, and testifies that he was informed that Wheeler, as a matter of fact, was both in the employment of the assured and engaged in its business at the time of the accident. The testimony in behalf of the plaintiff is to the contrary.

The agent also visited the hospital where the plaintiff was being treated, and produced at the trial a statement which he said the plaintiff made to him, indicating that he was at the time of the accident engaged in the business of the assured; but, upon that statement being read to the plaintiff while in bed in the hospital, he refused to sign it, and it was never signed. He testifies that he has no memory of the occurrence.

The fact is that the plaintiff, Wheeler, was not engaged in any business of the company at the time of the accident. He had been in the general employment of Honora G. Murphy, who, incidentally, was his mother-in-law, for some years, as a blacksmith. He was taken ill some time before the occurrence in question, and had not worked for a considerable period before the time of the accident. Neither had he been paid any salary or wages for that period, as the pay roll and accounts of the Lewiston Monumental Works showed conclusively. In fact, the defendant insurer

does not now seriously question the fact that the plaintiff was not engaged in the business of the assured at the time of the accident, nor that the plaintiff's accident was covered by the policy.

After receiving the information which led it to the conclusion that it was not liable for the result of the accident, for the reason that Wheeler was an employee of the assured engaged in her business at the time, the insurance company took no further steps in the case until the latter part of December, when it received a copy of the declaration in a suit Wheeler had begun against the insured to recover damages for his injuries received in the accident.

Thereupon further investigation was made, and agents of the insurer say that they were then first informed by agents of the assured that Wheeler was not in the employment and on the business of the assured when the accident occurred.

In spite of this information, however, the insurance company adhered to its first position that the accident was not covered by the policy, for the reason that Wheeler was working for the assured and on her business at the time of the accident; and the insurer then, *and for the purpose of that litigation,* elected to stand on that ground, and notified the assured on January 11, 1933, by letter, that it would not defend the suit for that reason.

The following excerpts from the letter show the position taken by the defendant company:

"Lewiston Monumental Works, Lewiston, Maine.

"Dear sirs: * * * It has just recently been brought to our attention that suit has been brought against you, * * * on behalf of Percy Wheeler who was injured while a passenger in one of your automobiles insured with this company, on October 17th, 1932, the automobile being driven by Lawrence Murphy, your employee.

"At the time this case was reported an investigation was made, and it was determined that at the time of the accident Percy Wheeler was working for you, and was at the time within the course of his employment, and therefore excluded from coverage under our policy. * * * After learning of this suit we made a check-up to confirm our original findings of fact, and in view of it must hereby disclaim any responsibility to you or to Mr. Wheeler for this accident. A reasonable time will be afforded you in which to procure counsel to appear for you in this suit. In view of the fact that the accident is not covered, the Lumbermens Mutual cannot appear to defend the action or indemnify you. If you desire counsel to appear for you and represent you in this suit, if you will have him get in touch with us immediately, we will arrange to see to it that he can enter his appearance so that your rights will not be prejudiced.

"Very truly yours,
"Lumbermens Mutual Casualty Company.
"By Forrest E. Richardson, its attorneys."

To the above letter the attorney for the assured replied on January 13th:

"Your letter of January 11th, 1933, addressed to Lewiston Monumental Works, in the behalf of the Lumbermens Mutual Casualty Company, has been handed to me for reply.

"Defendant emphatically declares your contention that Wheeler was working for the defendant, Honora G. Murphy, (Lewiston Monumental Works) at the time of the accident and was at that time within the course of his employment, to be erroneous, and requests me to notify you to defend the above suit in her behalf. Which service she claims under Automobile Policy No. 3810189, Lumbermens Mutual Casualty Company, dated April 23, 1933 (sic), and in force on day of accident.

"Kindly call on us if we can be of any assistance in the matter."

The insurer maintained the attitude stated in its letter of January 11th, and took no part in defending the suit against the assured, although it had an observer present at the trial who departed when told by the defendant that he might be wanted as a witness for the defense. Judgment was recovered by Wheeler against the assured, Honora G. Murphy, for $5,297.99.

The Maine statute above referred to enables the plaintiff here, having recovered a judgment against the assured, to proceed directly against the insurer by bill in equity in his own name, to "reach and apply" the insurance money to the judgment.

Conclusions of Law.

1. The defense that the automobile involved in the accident was not the property of the insured necessarily fails from the findings.

The defendant company was naturally misled or at least confused by the various names under which Honora G. Murphy carried on business; but, as it appears that she was the same person against whom judgment was recovered and who legitimately carried on

business and bought and carried this insurance under the name of Lewiston Monumental Works, no prejudice has resulted to the insurer.

2. Do the facts warrant the conclusion that the assured failed to co-operate with the insurer?

■ All the authorities agree that "cooperation" referred to in these policies carries the meaning that the assured shall give the insurer a full, fair, and frank disclosure of all information reasonably requested by the insurer, shall aid in defense of the suit and testify truthfully when called as a witness, and refrain from any collusion with the injured party, and from fraud. United States Fidelity & Guaranty Co. v. Wyer (C. C. A.) 60 F. (2d) 856; Coleman v. New Amsterdam Casualty Co., 247 N. Y. 271, 160 N. E. 367, 72 A. L. R. 1443, and many cases cited in notes.

No cases have been cited to me, however, nor have I seen any, which hold that an unintentional and accidental mistake in a statement of fact, especially if afterwards seasonably corrected, has been available as a defense to an insurer for alleged lack of co-operation.

"What would appear at first blush to be a breach of the co-operation clause may be excused if it develops that the failure of the assured was due to mistake, and that there was no exercise of bad faith on his part." Coleman Case above mentioned. Notes in 72 A. L. R. p. 1464; Conroy v. Commercial Casualty Ins. Co., 292 Pa. 219, 140 A. 905.

■ The evidence here negatives any intentional misstatement by the assured. It is only by a forced construction of different and separated answers to its own incomplete questionnaire in a printed form furnished the assured that the insurer attempts to point to any written statement that is not full and frank. If any misstatement was made by an agent of the assured to the agent of the insurer (which I do not find proved), it was innocently made and seasonably corrected.

■ The assured in the policy agreed, when requested by the company, to aid in securing and giving evidence, procuring the attendance of witnesses, and in prosecuting appeals, in other words, to co-operate and assist in the defense; but the insurer in this case refused to make any defense to the action against the assured, basing his refusal on the sole ground that the injury was not covered by the policy. For that reason also it cannot now set up as a defense lack of co-operation.

"While the receipt of the process and pleadings served on the codefendant gave no notice that service had also been made upon Hooper, there was testimony tending to prove that the appellant had actual notice of the service of process on Hooper, both before and after the default was claimed against him, and was given full opportunity to defend in his behalf, but *refused to do so on the ground that it had a complete defense to the action.* Under such circumstances, the failure to forward the process and pleadings constitutes no defense; and, inasmuch as the appellant refused to defend the action in behalf of Hooper, *it is now in no position to claim that he failed to co-operate or assist in a defense that was never made.*" (The italics are mine.) Indemnity Insurance Company, etc., v. Forrest et al. (C. C. A.) 44 F.(2d) 465, 466.

■ That which operates as a waiver or estoppel in favor of the assured, if the action upon the policy had been brought by him, also operates as a waiver or estoppel in favor of the injured person. See numerous cases cited in notes. 72 A. L. R. p. 1056. Also Killeen v. General Accident, etc., Corporation, 131 Misc. 691, 227 N. Y. S. 220.

The alleged failure to co-operate by the assured cannot avail the insurer in view of the circumstances of this case.

3. As to misrepresentation by the assured, if by that the defendant means lack of co-operation, that has already been covered. If fraud and misrepresentation are meant, under that heading of the policy, the findings of fact preclude any such conclusion.

4. Estoppel: If any estoppel operates here, it is on the defendant company. As there are no intentional misstatements shown, no misrepresentations, and no fraud on the part of the assured or the plaintiff, there is no room for estoppel by reason of any such thing.

A decree may be entered for the plaintiff, for the recovery of the amount of the judgment above mentioned, with interest and costs.