HARLAN PARK, Appellee, v. NATIONAL CASUALTY COMPANY, Appellant.

No. 43522.

NOVEMBER 24, 1936.

REHEARING DENIED MARCH 12, 1937.

862

Putnam, Putnam, Fillmore & Putnam, for appellee.

Bradshaw, Fowler, Proctor & Fairgrave, and Howard Steele, for appellant.

RICHARDS, J.—Defendant herein was the public liability insurance carrier of W. F. Craig and W. F. Craig, Jr. in the use of a certain automobile. Plaintiff Harlan Park recovered a judgment against the Craigs in an action founded upon the alleged negligence and recklessness in the operation of the automobile while plaintiff was riding therein. The action now before us was brought against defendant insurer to recover the amount of such judgment. There was a trial before a jury. At the close of the testimony each party moved for a directed verdict, whereupon it was stipulated that "As the record now stands it is a question of law for the court, and that the jury may be and is hereby excused, and the court may enter judgment in accordance with its ruling upon the motions without a formal verdict being returned by the jury." Plaintiff's motion was sustained, defendant's motion was overruled, and judgment was rendered against defendant and it has appealed.

Defendant assigns as error the overruling of its motion for a directed verdict and the sustaining of plaintiff's like motion. The complaint is that the evidence conclusively shows that at the time of plaintiff's injuries the insured automobile was being used for the purpose of carrying passengers for a consideration, which use appellant says was specifically excluded from coverage by the terms of the policy. The alleged excluding terms consist of provisions in the policy that the purposes of use as defined in the policy shall exclude the renting or livery use of the automobile and the carrying of passengers for a consideration, and that the automobile shall be insured for renting, livery, carrying passengers for a consideration, the business of demonstrating or testing, or the towing of any trailer, only when such uses are definitely declared and rated. Such uses were not declared or rated in the policy.

The evidence respecting the use of the car at time of plaintiff's injuries shows the following. For some time one Shuey had been managing an orchestra of ten members, all students at Iowa State College at Ames, including plaintiff Park and W. F. Craig, Jr. The orchestra made a practice of playing on week-ends at dances throughout the state, receiving compensation for its services. The members did not rely upon the orchestra for a livelihood, and their purpose was partly recreational. Ordinarily in filling engagements at places distant from Ames two automobiles were used. One belonging to Shuey was equipped with a trailer for conveyance of the instruments. The other car was furnished by one or another of the orchestra members. There was an understanding that from the proceeds of each engagement five and one-half cents per mile traveled was to be paid to Shuey and four and one-half cents per mile to whichever member furnished the additional car, making a total of ten cents per mile. The larger amount to be paid Shuey was on account of the trailer. Pursuant to this arrangement W. F. Craig, Jr. drove the insured car from Ames to Grinnell on May 20, 1934, transporting besides himself five members of the orchestra, Shuey conveying the others. Out of the orchestra's proceeds for playing the dance Craig was paid at Grinnell $6.30, being four and one-half cents per mile for 140 miles. After deduction of this amount and Shuey's five and one-half cents per mile, and taxes, there was distributed about $5.50 to each member of the orchestra excepting that Shuey drew double that amount. It was on the return trip to Ames that plaintiff sustained his injuries, riding in the Craig car. The members had fixed the aggregate of ten cents per mile as an arbitrary figure and this method was chosen by them because it was easier to set this fixed amount which approximated the actual cost of operating the cars than figuring out the exact cost of gas, oil and wear and tear on the tires. It was not the intention of the manager Shuey to pay anything more than the cost of operation and he testified that in his opinion he was receiving not more than the actual cost of operating the car. The main purpose of Shuey in making the trip to Grinnell was to fill an engagement to play at a dance, for remuneration and recreation. Shuey testified he would not have taken his car had he not been playing in the orchestra, and that the five and one-half cents per mile was insufficient as an incentive to make the trip, and that he would have taken his car

regardless of the amount of mileage received. He also testified that the orchestra operated on a mutual basis in which the members shared in the expenses and profits and that whoever furnished his car contributed his share toward the amount he was allowed in operating it. The evidence shows that the manner in which the members of the orchestra arrived at the figures of four and one-half and five and one-half cents per mile was by approximation and the figures were based on their belief as to what it would cost to operate the cars including gas, oil, depreciation on the tires and on the car. It also appears that neither Shuey nor Craig ever conveyed any members of the orchestra to dance engagements when they were not playing in the orchestra. The members thought it was not fair for one member, just because he had his car, "to have to go in the hole." It was the testimony of Craig, Jr., that his main purpose in making the trip to Grinnell was to enable himself and the orchestra to play at the dance, and that the main purpose was not the transportation of the members. He testified he would not have taken his car had he not been playing in the orchestra because he did not believe the money he received for transportation would be enough to pay the expense of operation, it being his opinion that the car could not be operated for four and one-half cents per mile. He also testified that it was not his intention to make any profit but received the money to apply on the expense of operating the car so that he could receive the same amount for playing the dance as the other members. He also testified his purpose in driving to Grinnell was largely recreational, that the money received was secondary; that the four and one-half cents per mile was not of itself sufficient incentive to make the trip had he not been playing in the orchestra. There was no agreement that Craig should be paid solely for gas and oil, but the agreement was that the orchestra would pay the operating expenses and that was agreed upon as being four and one-half cents per mile. There was evidence by stipulation that it would cost seven cents per mile to rent a sedan car without a driver for the trip from Ames and that the round trip bus fare would have been $3.25 per person.

In Askowith v. Massell, 260 Mass. 202, 156 N. E. 875, 876, the insured automobile owner and others contemplating a fishing expedition agreed that they would divide the expenses, including the payment by each member of a proportionate share of the costs of gasoline, oil and garage bill in the use of the car on the

trip. The question was whether under this arrangement plaintiff, one of the expeditionists, injured on the trip, was a guest of the car owner. From the opinion:

"It was agreed that the expenses should be divided between them, and that each member also should pay a proportionate share of the cost for gasoline, oil and garage bills. The plaintiff paid his share of the operating expenses to the defendant [car owner], who also contributed his part and made no other charge for transportation." The opinion further says: "There was no evidence that the plaintiff was a 'gratuitous guest,' nor was he a passenger for hire. The automobile was not being operated under a contract express or implied that the defendant should be paid for transportation as a separate and distinct charge. It was uncontroverted that the understanding of the members of the party which included the defendant was that only the charges for gasoline, oil and garage bills incurred for their common benefit comprised the cost of the trip which was to be shared equally. The exceptions state, 'It was agreed among the members of the party that the expenses of the trip should be divided between them,' and nothing appears which gives any support to the contention that because the defendant contributed the use of his car under the conditions described he became a carrier for hire." The Askowith case, supra, is referred to in the later case of Sleeper v. Massachusetts Bonding and Ins. Co., 283 Mass. 511, 186 N. E. 778, in these words:

"In Askowith v. Massell, 260 Mass. 202, 156 N. E. 875, the division of expense of operating an automobile among the members of a fishing party was held noncontractual, and consequently the passengers were within the class of guests. There is nothing in the opinion in that case inconsistent with what is here decided."

In the Sleeper case, just referred to, plaintiff's decedent was killed while being transported in an automobile to a designated town under an agreement that decedent would pay for gas, oil and meals. There was insurance, the policy containing the same provision as in the instant case. The opinion states: "Stetson (the insured) had no personal pleasure or interest in the journey but was willing to go upon those terms. He received $8 besides his meals." Also from the opinion: "We think that whenever there is a contract, based on valuable consideration,

having as its main purpose the carrying of passengers, the insurer under the form of policy in this case does not undertake to indemnify the owner or operator against liability for an occurrence during the journey covered by the contract.'' It was held that the insurer was not liable.

In Gross v. Kubel, 315 Pa. 396, 172 Atl. 649, 95 A. L. R. 146, the issue was whether the insured car was being used in violation of a condition in the policy that it should not cover any accident occurring while the automobile was being operated ''for carrying passengers for hire''. The insured was a member of a basketball team that played games in nearby towns. The team generally traveled to and from games by bus or rail but sometimes in automobiles owned by the players, in which instances the private car owners were paid an amount equivalent to bus fares or were compensated for the oil and gasoline and in addition given a small amount for the use of the car. Under such arrangement insured was transporting members of the team and one other person. The opinion sets out that the trial court, in holding that the car was being used within the conditions prohibited in the policy, stated:

''Under these facts, which are substantially undisputed, it is clear that the defendant was operating his car in the transportation of passengers for hire when the accident occurred. The arrangement for compensation under which he was carrying his passengers was more than a mere reimbursement for the gas and oil used by all in common on the trip. It went to the additional extent of compensating him for the use of the car. Had he been paid only a sum equivalent to the cost of the gas and oil used, a serious question might have arisen as to whether such a payment would have constituted a carrying for hire. The additional sum paid to him, however, brings the operation of the car squarely within the clause of the policy.''

The judgment of the lower court was affirmed. The Gross case was interpreted in a later Pennsylvania case, namely Orcutt v. Erie Indemnity Co., 114 Pa. Super. 493, 174 Atl. 625, 626, in these words:

''* * * and the insured member of a basketball team, was using his car for the purpose of transporting the team to another city to engage in a contest, and was to be paid an amount

equivalent to bus fare or paid the cost of oil and gas and given, in addition, a small amount for the use of the car.''

In the Orcutt case just mentioned, the question was whether an insured truck was being used for carrying a passenger for a consideration in violation of the same terms of an insurance policy as in the case at bar. The insured happened upon the scene while plaintiff was requesting a store proprietor to transport plaintiff and his painting equipment to another place in the same city. The insured offered to and did transport plaintiff, receiving therefor twenty-five cents, and indicated to plaintiff willingness to perform like service at a later time. On such later occasion the accident occurred in which plaintiff was injured. In the opinion the appellate court notes that the two parties were strangers to each other and that there were no circumstances from which an inference could be drawn that either party contemplated the work would be performed without charge. It was held that the insurer was not liable.

In Reed v. Bloom, 15 Fed. Supp. 600, 601, United States District Court, Western Division Oklahoma, the same issue arose upon an insurance policy as is in the instant case. The insured, the defendant Bloom, intending to drive his car from Oklahoma City to attend a convention at Des Moines, learned that three other residents of Oklahoma City purposed to attend the same convention. One of the three had purchased railroad transportation and another had made reservations. Upon being so apprised Bloom invited the three, one of whom was plaintiff Reed, to make the trip in the Bloom car. Nothing was said about expense excepting Bloom's suggestion that they could reduce expenses by occupying the same hotel room in Des Moines. The party of four left Oklahoma City in Bloom's car at an early hour and stopped at Claremore for breakfast where Bloom purchased gas and oil. After breakfast the three riding with Bloom suggested to each other that they should contribute to the payment of, or pay for the gasoline and oil. They so advised Bloom, who stated he expected nothing of that kind but the three insisted on each paying him ten dollars. Bloom reluctantly accepted. The approximate cost of gasoline, oil and storage of the car for the trip would have been forty dollars. No one thought of paying more than his proportionate share. Nothing further was said about the expense of the trip. Some hours later the car

overturned, injuring plaintiff. The opinion contains the following:

"The authorities seem to draw a distinction between a case where a private automobile, under a contract and agreement, is used for the purpose of transporting persons as passengers for a definite sum, and where a private automobile is used incidentally for the transportation of persons and the persons so transported contribute a sum for the purchase of oil and gas. In other words, if the owner of a private automobile agrees in advance to transport a passenger from one place to another for a definite sum, then that is recognized as being within the exclusions enumerated in the policy. But if the owner of the private automobile transports a person without any contract or agreement to pay for the oil or gas, as a consideration for the transportation, and voluntarily pays to the owner of the car a sum which may or. may not be sufficient to pay for the gasoline or oil used on the trip, another rule applies." The opinion then quotes from Cartos v. Hartford Accident & Indemnity Ins. Co., 160 Va. 505, 169 S. E. 594, as follows:

"It may well be, as is suggested in Indemnity Ins. Co. of North America v. Lee, 232 Ky. 556, 24 S. W. (2d) 278, that, where persons who are guests in an automobile, or are engaged in a joint venture with the owner or operator of the car, put gas in the car or contribute to the cost of purchasing gas for the trip which they are making, the owner or operator of the car is not carrying passengers for a consideration within the meaning of the exception here under consideration. But, wherever the facts are such that the operator of the car has cast upon him the duties and high degree of care that a person carrying another for compensation owes to the person so carried, the risk of liability for injuries arising from the negligence of the operator is excepted from the coverage by the provisions here under consideration."

After citing and discussing the case of Indemnity Ins. Co. v. Lee, 232 Ky. 556, 24 S. W. (2d) 278, and Gross v. Kubel, 315 Pa. 396, 172 Atl. 649, 95 A. L. R. 146, supra, and after stating that the court is in thorough sympathy with authorities holding that where the owner agreed in advance to transport persons who agreed to pay for oil, gasoline and storage as a consideration for the transportation the insurer is relieved under policy provi-

sions as that under discussion, the opinion in the Reed case concludes as follows:

"In this case there was no agreement or understanding of any nature or character except that the three occupants of the automobile advised the owner and driver of the same, at Claremore, Oklahoma, that they felt they should assist in paying for the gasoline and they made a contribution for that purpose. Under the authorities, however, which have been submitted to the court, the voluntary offer of the ten dollars each by the occupants of the automobile and the reluctant acceptance thereof by the owner and driver of the automobile, at Claremore, are not sufficient to constitute a contract either express or implied to carry passengers for hire, nor are these facts sufficient to establish the fact that the defendant Bloom was carrying passengers for a consideration."

In Clendenning v. Simerman, 220 Iowa 739, 263 N. W. 248, the issue was whether plaintiff's decedent, riding in defendant's automobile at the time of a highway accident, was there as a guest or by invitation and not for hire within the intendment of section 5026-b1, 1931 Code. Upon suggestion of his employer defendant was transporting in his automobile from Keota to Des Moines and return the employer's daughter and plaintiff's decedent, the reason for the suggestion being the inconvenience involved in the employer himself making the trip. Before the journey was commenced the employer told defendant to fill his gas tank, which was done, the gas being charged to the employer. The amount of such gas is not shown but the opinion finds that the distance was considerable and such gas probably insufficient for the trip. On the way toward Des Moines the defendant delivered for the employer a keg of beer and collected for same. Some days afterwards in the hospital defendant offered these proceeds to the employer, the latter telling defendant to keep the money, that he might need it. It was held that in receiving a little gas, defendant did not receive compensation for the cost of driving the auto on so an extended a drive, and that it clearly appeared that the money for the beer was not given or loaned as a consideration for transporting the passengers, and that plaintiff's decedent was a guest.

It is apparent that the authorities quite generally concede that money passing from the passenger to the operator of a car,

though associated with the carrying of the passenger, may or may not be a consideration for such carrying, within the meaning of a policy provision such as we are considering. In making the distinction the courts take into consideration not alone the bare transaction but all its surrounding circumstances, including among other things the status and relations of the parties one to another, the existence or lack of common interest, pleasure or benefit in the making of the journey, and the relation of the amount of the money to the actual costs of carrying. In the instant case the testimony is that, as occasion arose for filling an engagement, some member of the orchestra would voluntarily drive his car, carrying himself and other members. There was no contractual obligation resting on any member so to do. Apparently mere convenience determined which member would drive his car. But on each occasion the resultant burden on the driver of being out of pocket for the expense was inconsistent with the intention of the membership of the orchestra. This intention was that all should share equally in the earnings of the orchestra, and without any member "going in the hole". It was to avoid the unfairness and to carry out the intention of equal sharing that the arrangement was made that from the proceeds of each dance there should be turned over to whichever member happened to have driven his car four and one-half cents per mile traveled. The members estimated and agreed that the cost of driving such car amounted to four and one-half cents per mile. They took into consideration as such cost the consumption of gas and oil and the wear on the tires and car. In Clendenning v. Simerman, 220 Iowa 739, 747, 263 N. W. 248, 252, it is said:

"* * * it is a well-known fact that the outlay for gasoline is only one of the many expenses incident to the ownership and operation of an automobile."

The items that were considered in making the estimate cannot be said to be extraneous to actual cost. The members after making the estimate adopted the allowance of four and one-half cents per mile so as to avoid the inconvenience of keeping the account item by item. It is undisputed that this allowance per mile was no more and probably less than the actual cost of driving the car. In making the calculation it was not the intention of the members to allow any profit or anything above actual cost of operation. As the allowance did not exceed the actual

cost, the case of Gross v. Kubel, supra, may not be considered as controlling, as it turns on the payment of an additional sum above cost as the fact establishing the carrying of passengers for a consideration. The evidence is that the thing that impelled Craig to drive his car was the incentive to be present in Grinnell and to function as an orchestra member. Upon the record in this case it must also be said that the mileage allowance was something quite incidental, and as to its being the inducement for transporting plaintiff, the evidence was admitted that the trip would not have been made at all by Craig for the purpose of receiving the mileage. For these reasons it cannot be said, as in the Sleeper case, supra, that the driver of the car "had no personal pleasure or interest in the journey but was willing to go upon those terms."

Appellant urges that because the arrangement for the mileage allowance antedated the journey, it necessarily follows that the carrying was for a consideration. In support appellant cites expressions found in Clendenning v. Simerman, 220 Iowa 739, 263 N. W. 248, and in Reed v. Bloom, supra. But these expressions do not appear to have laid down the element of time as an insuperable criterion regardless of what in other respects may have been the essential nature of the arrangement or agreement. The Clendenning case in which one of the expressions is found cites Askowith v. Massell, 260 Mass. 202, 156 N. E. 875, and it is significant that in the Askowith case the arrangement was in advance of the carrying. Nevertheless, on account of the real character of the arrangement, it was held in the Askowith case that the carrying was not for a consideration.

The whole record compels the conclusion that Craig was not carrying plaintiff for a consideration within the meaning of the policy. This is because the arrangement in its essence was but the making of voluntary contributions which the members desired to make toward necessary expenses that they and Craig were incurring for the pleasure and benefit of each of them. The mileage does not appear to be a consideration for the transportation of plaintiff within the meaning of those words as interpreted by authorities we have cited. This is not a case in which a lack, on part of the carrier, of interest or pleasure in the journey may evidence that as to him payments toward costs of the trip were in reality the consideration for which he was transporting passengers.

The orders of the trial court upon the motions were not erroneous and the judgment appealed from is affirmed.—Affirmed.

PARSONS, C. J., and HAMILTON, DONEGAN, ALBERT, KINTZINGER, and STIGER, JJ., concur.