**AMERICAN SURETY CO. v. SUTHER-LAND et al.**

No. 2238 C. A.

District Court, N. D. Georgia,
Atlanta Division.

Nov. 1, 1940.

Wright & Willingham, of Rome, Ga., for plaintiff.

J. A. Gregory, of Calhoun, Ga., for the administrator.

Wm. F. Buchanan, of Atlanta, Ga., Y. A. Henderson, and R. F. Chance, both of Calhoun, Ga., and C. D. McCutchen, of Dalton, Ga., and J. H. Paschall, of Calhoun, Ga., for remaining defendants.

RUSSELL, District Judge.

In this proceeding the American Surety Company seeks a declaratory judgment that the terms of an insurance policy have been breached and that its liability under the policy be decreed, and for a declaration of nonliability.

### Findings of Fact.

1. That on the 30th day of March, 1938, the American Surety Company issued to Vaughn Sutherland its policy of automobile liability insurance with limit of $10,000 liability.

2. Such policy contained the following clauses:

"III. Defense of Claims and Suits. To investigate any claim for such damages and to negotiate settlement thereof as may be deemed expedient by the Company; to defend suits for such damages, even if groundless, in the name and on behalf of the Insured, unless and until the Company shall elect to effect settlement thereof.

"2. Accidents, Claims and Suits. Upon the occurrence of an accident involving bodily injuries or death, or damage to the property of others, the insured shall immediately give written notice thereof, with the fullest information obtainable, to the New York Office of the Company, or to one of its duly authorized agents. The Insured shall give like notice, with full particulars, of any claim made on account of such accident. If suit is brought against the Insured to enforce such claim the Insured shall immediately forward to the New York Office of the Company, or its authorized local representative, every summons or other process that may be served upon the insured.

"3. Co-Operation of Insured. The Insured shall not voluntarily assume any liability, or incur any expense, other than for immediate surgical relief, or settle any claim, except at the Insured's own cost. The Insured shall not interfere in any

negotiations for settlement, or in any legal proceeding, but, whenever requested by the Company, and at the Company's expense, the Insured shall aid in securing information and evidence and the attendance of witnesses, and shall co-operate with Company, except in a pecuniary way, * * *."

3. That on the 16th day of October, 1938, the Caylors' and Campbell's children, while passengers in the automobile covered by such policy and driven by the named assured, were killed and injured and suits thereafter filed alleging gross negligence of the named assured.

4. Notice of the accident was given by the uncle of the assured and within a few days after the accident representatives of the law firm of Wright & Covington made an investigation of the facts of the accident on behalf of the American Surety Company.

5. After the filing of suits in Gordon Superior Court such firm received notice from an attorney whom they had employed to assist in the investigation that suits had been filed, and because of proffer of representation from the plaintiffs desired to know whether the counsel would want his association in the defense of the suits, and in reply the firm stated that he could consider himself retained.

6. That the firm of Wright & Covington represented the American Surety Company generally in several counties, including Gordon County, which was known to attorneys in the cases.

7. Prior to the call of the appearance docket of Gordon Superior Court at which answers should have been filed to the suits of the present defendants, Graham Wright, Esq., of the firm of Wright & Covington, asked the Honorable John C. Mitchell, Judge of the Superior Courts of the Cherokee Circuit, including Gordon County, for additional time within which to file answers on behalf of the defendant, stating he represented him. Upon the call of the appearance docket in Gordon Superior Court upon being requested to mark the said cases in default, Judge Mitchell declined to do so informing all counsel involved of this request and statement.

8. That the American Surety Company retained the firm of Wright & Covington for defense of the suits brought by the plaintiffs in the State Court.

9. In the filing of the suits the name of J. A. Gregory was entered as a member of plaintiffs' counsel in three cases, but this entry was done without his knowledge and without his employment as a courtesy to him as he had just located in Calhoun, Georgia, for the practice of law.

10. Ben V. Sutherland was the duly appointed and acting administrator of the estate of Vaughn Sutherland and upon being served with a copy of the suits carried the copies and process to one of the attorneys for three of the plaintiffs in said suits, whom he looked upon as his regular lawyer and was told by such attorney for the plaintiffs in the state court suits that it would not be necessary for him to obtain counsel as the insurance company would defend.

11. That prior to the extended time within which answer to the suits could be filed, Y. A. Henderson, one of the attorneys for the plaintiffs, informed the administrator he had best secure counsel, and suggested J. A. Gregory, which was done, Gregory using part of the office of Henderson for his law office.

12. Gregory then prepared the answer to the suits and upon the filing of them ascertained that his name had been entered as counsel for plaintiffs in three of the suits and he had his name stricken from the docket as counsel for said plaintiffs. The material portion of the answer is:

"3rd. Further answering said petition defendant shows that no assets belonging to the estate of Vaughn Sutherland has come into his hands up to the date of filing this answer, and that he has been unable to find any assets belonging to said estate, except the automobile being driven by him at the time he met his death, and that the same was totally wrecked and is of no value, and for this reason he has no funds in his hands in his representative capacity as such Administrator to respond to any claim for damages of petitioner. However, defendant shows that his intestate, Vaughn Sutherland, held in his possession an insurance policy with Camden Fire Insurance Association and American Surety Company, insuring said Vaughn Sutherland against liability for damages to two or more persons for bodily injury, issued in the sum of $10,000.00, and defendant alleges on information and belief that said policy protects defendant in the liability, if any, that the estate of said Vaughan Sutherland is liable to petitioner for his damages.

"Wherefore, having fully answered said petition defendant prays that in the event

any judgment is reached by the Court in favor of petitioner, that· the same be so molded by the Court in favor of petitioner, that same be so molded that defendant shall not be liable to petitioner in any sum other than such sum as he may be able to recover from said Insurance Company on the policy aforesaid".

13. On May 4, 1939, the defendant administrator procured Y. A. Henderson, the attorney for the plaintiffs, to write the American Surety Company at New York, advising them of the pending suits and forwarding copies of the petitions.

14. On May 18, 1939, the Chief. Claim Agent, out of the New York Office of the American Surety Company, and a member of the firm of Wright & Willingham, secured statement from the defendant administrator, and on May 20th the administrator was advised by Graham Wright, Esq., as attorney for the American Surety Company, that the insurance company disclaimed all liability under the insurance policy because of breaches of its provisions and refused to defend the suits.

15. On May 24, 1939, the cases were tried in Gordon Superior Court and at the time the defendant administrator was out of the court room in the hall, and his counsel conducted no cross-examination and made no defense in the cases. The attorneys for the plaintiffs discussed the question of insurance and in effect asked for verdicts not ·exceeding $3,000. After two hours' deliberation the jury returned the verdicts set forth in the record, all of said cases having been submitted to the same jury. The verdicts referred to are as follows:

| | |
|---|---|
| Virginia Campbell | $3,000.00 |
| Mrs. William L. Campbell | 2,500.00 |
| Mrs. Madie Free Caylor | 2,500.00 |
| William L. Campbell | 1,500.00 |
| S. J. Caylor | 500.00 |

16. That there was no fraud or collusion on the part of the administrator of the assured, or on the part of the attorneys for the plaintiffs and the attorney for the administrator of the assured.

17. That the allegations in the answer of the defendant administrator in each of the cases were true.

### Discussion.

Upon the trial of this case without a jury, under the evidence introduced, the court became convinced, under the facts and circumstances proved, the American Surety Company by its attorney had such notice of the filing of the suits which, when coupled with the statements proven, and their effect being made known to the attorneys for the plaintiffs in the state court and the defendant therein, created a waiver by the present plaintiff of the provision of the policy with reference to the forwarding of copy of pleadings and process to the company.

It is a fair deduction from the evidence and circumstances that the attorney for the company was at least an authorized local representative within the terms of the policy, and while it is undisputed that no actual copies of the suits were delivered to the insurer prior to that conveyed by the letter of May 4, 1939, as the attorney for the company had notice and made statements with reference to the filing of answers upon which counsel for the parties relied, this was sufficient to excuse and waive a strict compliance with the terms of the policy, especially in view of the fact that the time at which default could have been entered was extended as a result of such· statements. Indemnity Insurance Company of North America v. Forrest, 9 Cir., 44 F.2d 465; Wheeler v. Lumbermen's Mutual Casualty Co., D. C., 5 F.. Supp. 193; Fentress v. Rutledge, Defendant (Royal Indemnity Company, Garnishee), 140 Va. 635, 125 S.E. 668; Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., Vol. 6, p. 408, § 4057.

The court states there is no direct conflict in the testimony of Judge Mitchell and Mr. Wright. The judge testified the statement was made while Mr. Wright testified he didn't recall making the statement. There is no ·evidence that Mr. Wright had not been retained by the company, and his letter to the local counsel, unexplained, coupled · with other evidence, is conclusive that he had been.

No finding of bad faith is made as against either party in this case. In fact, no express denial is made that the company did not have actual notice, but merely that it was not supplied with copies of the pleadings and process.

At the conclusion of the trial the mind of the court was not clear as to ·the effect of the filing of the answer of the nature as that shown by the pleadings and evidence on behalf of the defendant administrator in the state court, in view of the decisions of Georgia appellate courts which declare that in case of prejudice resulting

from the mention in evidence or argument of the fact that the defendant in a negligence case is protected by insurance, the trial court should, upon proper and timely objection, declare a mistrial.

Counsel were requested to submit briefs upon this question and the case taken under consideration.

Solution of the question is not altogether free from difficulty. The plea filed by the administrator is unusual and the facts surrounding this case are unusual. The ultimate and controlling question in the case, in which must be determined the right of the plaintiff to a declaration of non-liability because of the alleged breach of the provisions of the policy, must turn upon the effect of the filing of the answer of the defendant administrator which clearly and without any equivocation presented to the jury the fact that the estate was insolvent, but was protected to the extent of $10,-000 as against the claims of the plaintiffs by the policy of insurance issued, and this after the insurer had taken no steps to itself defend the suits, which were then about to be marked in default.

I am not particularly impressed with the claimed destructive effect upon the validity of the policy of the amendments to the petitions filed by the plaintiffs after the coming in of the answer, for after the answer it is my opinion these pleas were permissible, and the entire question hinges upon the effect of the answer.

While it is apparent, as shown by the findings of fact, that counsel for the plaintiffs all had knowledge of the insurance and in fact knew that if they obtained a monetary recovery for their clients it would have to be secured from the insurer of the deceased, still the evidence does not show such collusion or fraud as to relieve the company from liability unless under the terms of the policy. State Automobile Mutual Insurance Company of Columbus, Ohio v. York, 4 Cir., 104 F.2d 730, 734.

Therefore, in this proceeding requesting a declaration of non-liability, the respective rights of the parties under the circumstances of the case and the terms of the policy must be determined. Under the facts as found, the insurer had proper notice of the pendency of the suits against an administrator of an estate having no actual assets, but which was protected to the extent of $10,000 by a policy obtained by his decedent as against the claims of the plaintiffs, should they recover. While not technically an asset of the estate, if the plaintiffs obtained a legal judgment against the administrator it was as to such claimants an actual asset, and in fact if the judgment had not been paid the administrator could have sued the insurer in his name for the benefit of the judgment claimants. Robinson v. Dana's Estate, 87 N.H. 114, 174 A. 772, 94 A.L.R. 1437.

There is some evidence in the record that counsel for the insurer stated that under the facts and circumstances of the accident there was no defense to the suits, which, however, counsel stated he could not remember making, but regardless of the reason, the insurer chose not to defend the suits as required to do by the terms of the policy. Thus the administrator was confronted with the dilemma of not answering the suits and permitting judgments by default in a possible sum of $41,500, or filing answers. Under the law of Georgia, if he had failed to file a plea of no assets he could have been held personally responsible for any judgment obtained de bonis testatoris in the absence of a plea. Code, Section 113-2110; Phipps v. Alford, 95 Ga. 215, 22 S.E. 152; Bynum v. Bell Co., 18 Ga.App. 384, 89 S.E. 431.

I am not prepared to hold that as to these plaintiffs (and confined solely to them as the injured in the accident insured against by the policy), the defendant by fulfilling an obligation to truth, the court and the parties, as well as to his fiduciary relationship, in filing an answer of no assets and mentioning the existence of the insurance policy, committed such fraud or collusion as renders the judgments void. Having disclosed the existence of insurance, he was certainly justified in an effort to avoid personal liability by restricting the recovery to the limits of protection and "assets" available to these plaintiffs.

If the insurer wished to prevent this feature of the case from becoming known to the jury it could have complied with its obligation to defend the cases. Even after the filing of the answer and the subsequent actual delivery of copies of the petitions to the company, the insurer was not legally prejudiced by the filing of the answer and could have withdrawn it and filed a different one. Its counsel argues that it would have been available as evidence, but under the Georgia rule

as above referred to its offer as evidence before the jury would have been cause for a mistrial, as often as attempted to be so introduced. O'Neill Manufacturing Co. v. Pruitt, 110 Ga. 577, 578, 579, 36 S.E. 59; Heinz v. Backus, 34 Ga.App. 203 (2), 128 S.E. 915; Decatur Chevrolet Co. v. White, 51 Ga.App. 362, 180 S.E. 377; Atlanta Coach Company v. Cobb, 178 Ga. 544, 549, 174 S.E. 131.

Furthermore, after the occurrence of the accident, the representative of those killed therein and parents of the young person injured had some rights under the policy which should not be lightly disregarded, and under the evidence in this case I am unable to find that they, or their counsel, suggested or controlled the making of the allegations therein set forth.

■ In view of the circumstances of the case and the allegations of the petition, it is not clear that the insurer could have avoided in any event recovery against its insured in the full amount of the policy. So far as the present proceeding is concerned, wherein no actual fraud or collusion is disclosed, and the sole question is whether the statement in the answer of the defendant administrator, (as to the existence of the insurance policy), and his failure to take steps in the defense of the case, or object to the discussion of insurance before the jury, after the breach by the insurer of its duty under the policy to defend the action is sufficient to avoid the policy, I am of the opinion that such conduct is not sufficient to justify the insurer taking advantage of its own neglect and avoiding liability, unless within the strict terms of some provision of the policy, upon which it is of course entitled to rely. In other words, the insurer should not be permitted to avoid liability, otherwise unquestionably shown, by criticism of the manner of handling of the litigation and the wisdom and astuteness of the defense employed, and the lack of vigor with which it was maintained. Berry on Automobiles, p. 1540, sec. 1814; Tighe v. Maryland Casualty Co., 218 Mass. 463, 106 N.E. 135; Indemnity Insurance Co. v. Lee, 232 Ky. 556, 24 S.W.2d 278.

I have referred to the right of the insurer to rely upon compliance with the terms of the contract. So far as relates to the policy, the breach of its conditions plead by the insurer are the failure to forward copies of the suits and process; the failure to co-operate and waiver of rights in connection with pending suits, and the acts of the administrator in delivering to counsel for three of the plaintiffs copies of said suits, and his delivery to counsel for the other two plaintiffs the policy of insurance; and his waiver of the twelve months' exemption from suit permitted an administrator under the laws of Georgia. In the argument it is contended the filing of the answer breached the agreement not to interfere in legal proceedings.

■ Manifestly, the furnishing of copies of petitions filed by the plaintiffs to the counsel who had prepared them is not prejudicial in and of itself, and with reference to the delivery of the insurance policy the evidence discloses that the policy was delivered to plaintiffs' counsel not by the defendant administrator, but by the agent of the insurer, which of course could not constitute nonco-operation on the part of the defendant administrator.

■ The question of waiver of the twelve months' exemption is not insisted upon and is not meritorious in any event. The question of failure to forward notice of the suits has been discussed. The defendant administrator did not fail to co-operate for co-operation implies assistance and the insurer requested none. United States Casualty Co. v. Drew, 9 Cir., 5 F.2d 498, 499. In fact, it declined to have any part in the litigation, so we are called upon to determine whether within the terms of the policy the defendant administrator interfered in legal proceedings.

■ It appears that a fair construction of all of the terms of the contract, and bearing in mind the antecedent obligation of the policy imposed upon the company to defend "suits for such damages, even if groundless, in the name and on behalf of the insured," that the term "legal proceeding" (especially when considered with its context requiring the insured to aid in securing information and evidence, and co-operation in all matters which the company deems necessary in the defense of any suit), must be construed in the light of the policy as a whole, and that the "interference in legal proceedings" forbidden has reference to a legal proceeding defended in accordance with the terms of the policy.

■ It is not a fair construction of this provision to hold that the company can refuse to take any steps in defense and the insured defendant must nevertheless refrain from filing any defense whatever.

Such a construction would be contrary to the very purpose of such contracts. In this view of the matter, which seems to me to be just and proper, under the facts as found, the insurer is not entitled to invoke this provision of the policy. 29 Am. Jur., p. 808, sec. 1077; St. Louis Dressed Beef & Provision Company v. Maryland Casualty Company, 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712.

Discussion has already been had as to the effect of the failure of the insurer to defend upon its right to question as against the claimants the validity, force and effect of pleadings filed by the defendant before the jury and court after the failure of the insurer to conduct the defense of such suits "even if groundless". See, also, Royal Indemnity Co. v. Schwartz, Tex.Civ. App., 172 S.W. 581.

The facts and circumstances of this case are not sufficient to establish in my mind the right of the petitioner to a declaration of invalidity of the policy, and the prayer for such declaration is therefore denied.

### Conclusion of Law.

The conclusion of law is that the petitioner is liable under the terms of the policy to the defendants in the amounts of their respective judgments as set out in the petition. Declaration and decree may be presented accordingly.