HIMELSON v. GALUSZ.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—SPECIFIC PERFORMANCE.

Suit for specific performance of a land contract being a chancery case is reviewed *de novo* by Supreme Court.

2. SAME—FINDING AS TO VALUE—EVIDENCE.

In suit for specific performance of land contract for conveyance of building, located in mixed business and residential neighborhood and which had been divided into six apartments, determination of trial judge that premises were worth $8,000, instead of $12,000 to $14,000 as claimed by defendants, is not disturbed under evidence presented.

3. VENDOR AND PURCHASER—SPECIFIC PERFORMANCE—FRAUD—EVI-
DENCE—EXECUTION OF LAND CONTRACT.

In suit for specific performance of contract to sell vendees'
interest in a land contract, finding of trial judge that defend-
ants had failed to establish fraud on the part of plaintiff
when contract was executed is not disturbed in view of the
conflicting testimony and the fact that the trial judge saw
and heard the parties.

4. SAME—FICTITIOUS SIGNATURES—EVIDENCE.

In suit for specific performance of contract to sell vendees'
interest in a land contract, finding of trial court that name
of one of the vendees therein named was purely fictitious so
far as its use therein is concerned is not disturbed in view
of his better position to judge the credibility of and weight
to be accorded testimony of witnesses.

5. SAME—USE OF FICTITIOUS NAME BY PURCHASER.

Defendant who signed contract to sell vendees' interest in land
contract who had signed the first contract with a fictitious
name obligated herself as a vendee thereon.

6. SAME—EXECUTION—TENANTS IN COMMON—SUBSEQUENT MAR-
RIAGE.

Man and woman who were not married at time they executed
land contract as purchasers became owners of the vendees'
interest as tenants in common where there was no change in
the instrument although later they were married.

7. SPECIFIC PERFORMANCE—CONTRACT TO PURCHASE VENDEES' IN-
TEREST IN LAND CONTRACT.

Contract for purchase of vendees' interest in land contract,
which was obligatory on both parties and was sufficiently
complete, definite and certain, gave mutual rights of specific
performance.

Appeal from Wayne; McDonald (Archie D.), J.,
presiding. Submitted June 14, 1944. (Docket No.
68, Calendar No. 42,707.) Decided September 11,
1944.

Bill by Hilda Himelson against John Galusz and
wife for specific performance of a contract for the
sale of real estate. Decree for plaintiff. Defend-
ants appeal. Affirmed.

*Jos. B. Beckenstein,* for plaintiff.

*Harry J. Lippman (Leslie D. Bloom,* of counsel), for defendant.

STARR, J. Defendants appeal from a decree granting plaintiff specific performance of a written contract by which defendants agreed to sell and plaintiff to purchase the apartment-house property located at 2628 Twelfth street in the city of Detroit, for a price of $8,000. This being a chancery case, we review the same *de novo*.

On November 12, 1936, the Detroit Fire & Marine Insurance Company executed a land contract whereby they agreed to sell the property in question to vendees designated as John Galusz (defendant) and Mary Zillis for a price of $8,000, payable $1,600 down and the balance in monthly instalments of $64 including interest. Defendant John Galusz signed the contract as vendee, and defendant Mary Galusz (who at that time was married to one Alec Zelasny) signed both the names "Mary Zillis" and "Mary Zelasny" on the contract. In February, 1937, said Mary Zelasny began divorce proceedings against Alec Zelasny, and in February, 1938, obtained a decree of divorce. A month later, in March, 1938, she married defendant John Galusz. The land contract was continued without change as to the name of Mary Zillis. Defendants John and Mary Galusz occupied one of the apartments, paid the monthly instalments on the contract, paid the premiums on fire insurance policies issued in their joint names, and generally managed the property as owners thereof. The property is located in a mixed business and residential neighborhood, and the building, which is 34 years old, is divided into six apartments of five small rooms. The apartments

are not modern, as much of the equipment is obsolete and the upper floors are heated with stoves. Testimony was presented by plaintiff indicating that the property was worth about $8,000 and by defendants that it was worth $12,000 to $14,000. After examination of such testimony we are inclined to agree with the trial court who determined that $8,000 was a reasonable price.

For some time prior to their execution of the agreement in question defendants had been endeavoring to sell or trade their equity in the property. Their agent, David Rabinovich, informed plaintiff that the property was for sale, and with defendants' consent, plaintiff and her husband inspected it. On the evening of August 26, 1942, plaintiff, her husband, and agent Rabinovich went to defendants' apartment, and they agreed on a price of $8,000, of which amount plaintiff would pay defendants their equity above the balance of about $3,700 due on the original land contract. The same evening, at defendants' suggestion, they went to the office of Joseph Smolenski, a notary public, and he prepared the agreement of sale. All parties signed the agreement in Smolenski's office, and plaintiff gave defendants a check for $100 as a binder payment, which check they cashed the next morning. The agreement, as embodied in plaintiff's offer and defendants' acceptance, was in the following form:

"ABSTRACT & TITLE GUARANTY COMPANY
"Detroit, Michigan

"Revised form of memorandum of sale

"The undersigned agrees to purchase the premises situated in the city of Detroit, Wayne county, Michigan, viz: as on the land contract made on November 12, 1936, between Detroit Fire & Marine Insurance Company, as sellers and John Galusz and Mary Zilis as the purchasers, being the

premises known as number 2628 on the east side of 12th street between Spruce and Henry and pay therefor the sum of $8,000, upon the following conditions.

"The sale to be consummated by: * * *

"2. Payment of the purchase money in cash or certified check less the amount owing upon an existing land contract now on the premises with accrued interest to date of consummation held by Detroit Fire & Marine Insurance Company upon which there is unpaid $3,771.06 with interest at 6 per cent. from August 12, 1942, which land contract becomes due on or about November 12, 1946, with an agreement by the grantee to assume and pay such land contract.

"If the seller's title to said land is evidenced by an existing land contract with unperformed terms and conditions substantially as above set forth and the cash payment to be made by the undersigned on consummation hereof will pay out the equity, an assignment and conveyance of the vendee's interest in the land and contract with an agreement by the undersigned to assume the balance owing thereon, will be accepted in lieu of the contract proposed in the preceding paragraph. * * *

"There shall be secured and delivered to the undersigned for examination as soon as may be, a complete abstract of title and tax history of said premises issued by the Abstract & Title Guaranty Company of Detroit, certified to a date later than the date of the acceptance hereof, or, if delivered on the day of such acceptance, certified to that date. * * *

"If a marketable title can be conveyed in the condition required by this offer, the sale shall be consummated within 30 days after delivery of such abstract or policy of title insurance. * * *

"The purchasers hereby agree to pay Dave Rabinovich sum of $150 for his services in connection of this sale; at the time of closing of this deal.

"It is also agreed upon between the parties hereto that the sellers have the right to occupy their flat free of charge for the period of 30 days after the closing of this deal.

"Authority is given Dave Rabinovich, real estate broker, to make this offer and pay a deposit of $100 on the purchase of said land to John Galusz and Mary Zilis.

"Dated August 26, 1942.

"HILDA HIMELSON, Purchaser. * * *

"Acceptance

"To the above-named purchaser:

"Your offer as stated above is accepted and receipt of the above-mentioned deposit money on account of the purchase price acknowledged and the undersigned agree to sell said lands on the terms stated and on consummation to pay a commission of $50 to Dave Rabinovich, broker.

"JOHN GALUS, L. S.

"MARY GALUS, L. S."

(Defendants John and Mary Galusz severally acknowledged their execution of the above agreement before Joseph M. Smolenski, a notary public).

On August 28, 1942, the insurance company, vendor in the land contract, delivered the abstract of title to plaintiff. She testified that on August 29th, three days after the offer and acceptance were executed, defendant Mary Galusz tendered back to her the binder payment of $100 and said that she was not going through with the sale because "her son did not want her to sell." Mary Galusz claimed she made such tender, which plaintiff refused, on August 27th. About September 19th defendants sent plaintiff a postal money order for $100, which money order she refused to accept and returned.

On September 25th plaintiff tendered defendants a certified check for $4,360 in payment for their equity in the property, and also tendered, for their

execution, a written assignment of their vendees' interest in the original land contract. Defendants refused to accept the certified check and to execute the assignment.

On September 29th plaintiff filed bill of complaint for specific performance of defendants' agreement to sell. Defendants answered, alleging that plaintiff fraudulently obtained such agreement by causing them to become so intoxicated that they did not understand what they were doing. They also alleged that their agreement to sell was not enforceable because not signed by Mary Zillis who, with defendant John Galusz, was named as a vendee in the original land contract; that said Mary Zillis and defendant John Galusz hold the vendees' interest in said contract as joint tenants and their interests are not severable. They further alleged that defendant Mary Galusz, who signed the present agreement to sell to plaintiff, has no interest in the property except her dower interest as the wife of defendant John Galusz. They also filed cross bill asking that their agreement to sell to plaintiff be declared void and unenforceable because obtained by fraud. In her reply to defendants' answer, plaintiff denied the charge of fraud and alleged in substance that the said Mary Zillis, who purported to have signed the original land contract as one of the vendees, was a fictitious person; that defendant Mary Galusz and said Mary Zillis were one and the same person; and that defendants John and Mary Galusz, who executed the agreement to sell to plaintiff, own the vendees' interest in the property. We note that in some instances the record refers to the defendants as "Galusz" and in some instances as "Galus" and as "Gillis"; that the former husband of defendant Mary Galusz is referred to as "Zelasny" and also as "Zelazny"; and that the purported vendee in the

land contract is sometimes referred to as "Zillis" and again as "Zilis" and "Zillias."

The trial court determined there was no fraud on the part of plaintiff; that defendant Mary Galusz (formerly Mary Zelasny) signed the original land contract in the fictitious name of Mary Zillis; and that defendants John and Mary Galusz, who were not married at the time they executed said contract, own the vendees' interest therein as tenants in common. A decree was entered dismissing defendants' cross bill and granting plaintiff specific performance. Defendants appeal from such decree.

In support of their contention that plaintiff obtained their agreement to sell by fraud, defendants testified that when their agent Rabinovich, with plaintiff and her husband, came to their apartment in the evening of August 26th, Rabinovich brought a quart of whisky; and that they became so drunk they did not understand what they were doing when they signed the agreement to sell to plaintiff. A daughter, Genevieve Zelasny, testified that her stepfather, defendant John Galusz, was drunk. Plaintiff, her husband, and defendants' agent Rabinovich denied that liquor was served in the Galusz apartment, and denied that defendants were drunk. The notary public, Smolenski, also denied that defendants were drunk when they executed the agreement to sell in his office. It would serve no purpose to discuss such conflicting testimony. The trial court, who saw and heard the parties, was best able to judge the credibility of and weight to be given their testimony, and we are not disposed to interfere with his finding that defendants failed to establish fraud on the part of plaintiff.

A more serious question arises regarding Mary Zillis. As hereinbefore explained, the land contract designated the vendees as John Galusz and Mary

Zillis. Defendant Mary Galusz (formerly Mary Zelasny) admitted that she signed the names Mary Zillis and Mary Zelasny on the contract. In explaining her signatures, she said that Mary Zillis, who lived in her home, could not read or write English and requested her to sign the contract. She testified that her husband, defendant John Galusz, and said Mary Zillis were cousins; and that each of them paid $800 of the down payment of $1,600 on the land contract. She further said in substance that in 1939 said Mary Zillis stated that she was going to Canada and was leaving her interest in the property in defendants' care. She also said that she had not seen Mary Zillis since 1939 and did not know her whereabouts.

However, the above testimony of defendant Mary Galusz is somewhat discredited by statements in her sworn answer to a cross bill filed by her former husband, Alec Zelasny, in their divorce proceedings, which cross bill and answer were properly admissible in evidence in the present case. In his cross bill Alec Zelasny alleged in part:

"That during the year of 1936, the plaintiff and cross defendant (Mary Zelasny, now Mary Galusz) took all the money, and informed the defendant and cross plaintiff (Alec Zelasny) that she was going to purchase a farm; * * * that instead of purchasing a farm, the * * * (plaintiff and cross defendant), with one John Galucz purchased an apartment house at 2628 Twelfth street, Detroit, Michigan, and that your defendant and cross plaintiff was not made a party to the purchase of this property, although most of his earnings were used to purchase this property."

In her sworn answer to such cross bill, said Mary Zelasny (now Mary Galusz) said in part:

"The plaintiff and cross defendant (Mary Zelasny) emphatically denies that the defendant and

cross plaintiff (Alec Zelasny) turned over any money to her * * * and * * * will show that a few months ago she did become a purchaser of the premises (2628 Twelfth street) * * * under land contract, wherein she purports to have an undivided one-half purchaser's interest, * * * and that the entire investment in and for the purchase thereof was $1,600, of which the co-purchaser (defendant John Galusz) invested $800, and loaned to the plaintiff and cross defendant (Mary Zelasny) the sum of $800, so she could invest her share, upon the express understanding that the loan of the $800 was to be repaid upon the resale of said premises.''

Defendant John Galusz also testified that Mary Zillis was his cousin; that she paid half of the down payment on the property; and that he had not seen her for several years and did not know her where-abouts. However, examination of defendant Galusz' entire testimony creates doubt as to his credibility. Genevieve Zelasny corroborated the testimony of her mother and stepfather as to the existence of Mary Zillis.

There was considerable testimony tending to show that defendants had always treated the apartment property as their own and had made no mention of their present claim that said Mary Zillis had an interest therein. They used the income from the building to pay for repairs and maintenance and to make payments on the land contract, and whatever was left they used for their living expenses.

To quote from or discuss the voluminous and confusing testimony of defendants would not materially help to clarify the issue as to whether said Mary Zillis was a real or fictitious person. Although there may have been a person by the name of Mary Zillis, the testimony is not convincing that she acquired and owns one half the vendees' interest under the original land contract. Our study of the record leads us to believe that the name Mary Zillis

was used fictitiously by Mary Zelasny (now Mary Galusz) in executing such land contract. It should be noted that she also signed said contract in her own name, Mary Zelasny. The trial court, who saw and heard defendants and other witnesses, was in a better position to judge the credibility of and the weight to be accorded their testimony, and we agree with his finding that "Mary Zillis is purely a fictitious person, so far as the use of that name in the contract of purchase   *   *   *   is concerned."

We conclude that by signing the fictitious name, Mary Zillis, on said land contract, defendant Mary Galusz (formerly Mary Zelasny) obligated herself as a vendee thereon. As defendants John and Mary Galusz were not married at the time they executed such land contract, they became and are the owners of the vendees' interest as tenants in common. *Price v. National Union Fire Ins. Co.*, 294 Mich. 289.

Defendants failed to establish fraud on the part of plaintiff in obtaining their agreement to sell. The agreement was obligatory on both parties and was sufficiently complete, definite, and certain to give mutual rights of specific performance.

The decree of the trial court granting plaintiff specific performance and dismissing defendants' cross bill is affirmed. Plaintiff shall recover costs of both courts.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.