Argued December 1, 1960, reargued April 14, reversed
July 12, 1961

# JARVIS ET UX *v.* INDEMNITY INSURANCE COMPANY

363 P. 2d 740

*John W. Whitty,* Coos Bay, argued the cause for appellant. With him on the brief were McKeown, Newhouse & Johansen, Coos Bay.

*Lynne W. McNutt,* Coos Bay, argued the cause for respondents. On the brief were McNutt and Gant, Coos Bay.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

GOODWIN, J.

The defendant insurance company appeals from a judgment in favor of the plaintiffs.

The plaintiffs became judgment creditors of Robert and Elsie Bunyea in an action in Deschutes County for property damage arising out of the movement of the plaintiffs' house trailer from Winchester Bay to Madras, Oregon. The trailer was damaged in an amount found by the Deschutes County jury to be $5,800. The present defendant denied coverage, and this action was brought in Coos County to enforce the contract of insurance.

The policy excludes liability for loss incurred while carrying property for a charge. The exclusion is contained in a clause which defines the hazards insured under a garage-comprehensive endorsement. There is no substantial conflict on this point.

In the Deschutes County action, the plaintiffs alleged that the transportation was hired for valuable consideration. This allegation was denied by the Bunyeas, who alleged that the transportation was part of a joint enterprise. Trial was had, and a general verdict was returned for the plaintiffs.

The plaintiffs in the case at bar pleaded their Deschutes County judgment and alleged that it was covered under their concept of the legal effect of the policy. The defendant, in an amended answer, denied coverage and alleged facts which amount to a plea of *res judicata*. The issue in Coos County was whether the plaintiffs' judgment against the Bunyeas was

rendered upon facts which were within the terms of the defendant's insurance policy.

The trial court, sitting without a jury, found as a matter of fact that the Bunyeas were not carrying property for a charge, but that the agreement between the plaintiffs and the Bunyeas was for a mutually advantageous trip. The court found that contributions of cash (by the plaintiffs), equipment (by the Bunyeas), and personal assistance (by both) were made so that the plaintiffs would have their trailer moved and the Bunyeas would be accommodated in the hunting of deer when the season opened the day following the accident. The court concluded that the loss which lay behind the judgment was covered by the Bunyeas' policy and entered judgment accordingly.

If there were merely a conflict in the evidence with reference to the relationship between the plaintiffs and the Bunyeas, the findings of fact by the trial court would be invulnerable upon appeal and we would need proceed no further. *Miller Const. Co. v. D. M. Drake Co.,* 221 Or 249, 268, 351 P2d 41; *Oxley et al v. Linnton Plywood Ass'n,* 205 Or 78, 99, 284 P2d 766. However, the defendant contends that the plaintiffs are barred in this action as a matter of law, because the judgment in Deschutes County is *res judicata* with reference to the terms of the transportation agreement.

■ As a general proposition, a judgment in an action against an insured may be invoked as conclusive in its favor by the insurer in a subsequent action against it, if the issue decided in the prior action was material to the judgment and is identical with the issue claimed in the later action to be *res judicata,* even though the insurer was not a party to the first action. An-

notation, 123 ALR 708, 709, and cases collected therein. On privity in such cases, see Restatement (1942 ed), Judgments 390, § 84, and Annotations, 69 ALR2d 858, 139 ALR 9, 54.

■ The plaintiffs, having the burden of proving that the judgment which they had previously recovered is one falling within the engagements of the insurer to pay, must prove that the loss established in the first case was an insured loss, and not merely a loss for which the Bunyeas themselves might have been liable.

Where the insured brings the action over against his insurer, it is held that he must rely upon the judgment against himself as the basis of his action against the insurer, and with the judgment he must take for better or for worse the adjudicated facts upon which it rests. Otherwise, he has no way of showing that the alleged loss is one covered by the insurer's engagement to pay. *American Surety Co. v. Singer Sewing Mach. Co.,* 18 F Supp 750 (DC NY 1937). The burden is on the insured to demonstrate that the former judgment was based upon evidence which identified it as one within the coverage of the insurer's obligation. *General Cas. Co. of Wisconsin v. Larson,* 196 F2d 170, 173 (8th Cir 1952).

■ The insurer in the case at bar contends that the relationship between the plaintiffs and the insured, whatever it might have been in fact, was decided in the prior action to be a transportation for hire, and that all parties are now bound by that decision. The plea of *res judicata* or collateral estoppel places the burden of proof of that issue upon the estoppel asserter. *Davis v. Schumacher,* 226 Wis 76, 275 NW 902; Restatement (1942 ed), Judgments 306, § 68, *Comment k.*

The plaintiffs must prove a *prima facie* case before we come to the defendant's burden of going forward with evidence to prove a collateral estoppel. The plaintiffs offered in evidence all the pleadings used in the former action. The Deschutes County pleadings are the only evidence in the record of the Coos County case to show what questions were resolved by the plaintiffs' judgment. The complaint in the action in Deschutes County contained the following allegation:

> "That on or about the 28th day of September, 1956, the plaintiffs, for a valuable consideration, hired the defendants as a commercial carrier to tow the said trailer, containing the aforesaid furniture, furnishings and personal effects, from Winchester Bay, Oregon, to Madras, Oregon. That on said date, the said defendants, for valuable consideration paid to them by the plaintiffs, undertook to tow said trailer behind the defendants' 1950 Ford one-half ton pickup. That as a part of the consideration for said hiring, defendants employed plaintiff, Edward Jarvis, to assist defendant, Robert Bunyea, in driving the towing vehicle. That during the trip herein mentioned the said towing vehicle and trailer were under the exclusive control and direction of the defendants."

The Bunyeas, as noted earlier, had denied the quoted paragraph of the plaintiffs' complaint and alleged that the agreement was for a joint enterprise. The Bunyeas further alleged that the accident was caused by the negligence of the plaintiff Jarvis, who was driving the towing vehicle. The allegations of joint enterprise as well as those of negligence on the part of the plaintiff Jarvis were denied, however, by the plaintiffs in their reply and can not now aid or supply allegations omitted from their complaint.

*Donaghy v. O.-W.R. & Nav. Co.*, 133 Or 663, 672, 288 P 1003, 291 P 1017.

█ No transcript of the Deschutes County trial has been produced, so we have no extrinsic evidence that any issues other than those made up by the pleadings were submitted to the Deschutes County jury. Cf. Restatement (1942 ed), Judgments 305, 306, § 68, *Comments k, l,* and *m,* on treatment of extrinsic evidence to prove what is *res judicata.*

We will assume, without deciding, that the Deschutes County jury might have been permitted by the trial court to give judgment for the plaintiffs without believing the above-quoted allegations if some other theory had been submitted to the jury. However, the question is not whether the jury might have found for the plaintiffs on some other theory, but whether the plaintiffs' evidence in the present case permits us to indulge in such speculation. There is no relevant evidence to supplement the pleadings which accompany the judgment. These pleadings reveal the issues actually passed upon. Restatement (1942 ed), Judgments 305, § 68, *Comment k.* Since the plaintiffs had to tender some issue concerning duty on the part of the Bunyeas in order to recover their first judgment, it follows that the only such issue passed upon must have been actually and necessarily included within the matters adjudicated within the meaning of ORS 43.160:

"* * * What determined by former judgment. That only is determined by a former judgment, decree or order which appears upon its face to have been so determined or which was actually and necessarily included therein or necessary thereto."

The statutory rule is essentially the common-law

rule. *State of Oregon v. Dewey,* 206 Or 496, 504, 505, 292 P2d 799; Restatement (1942 ed), Judgments 293, § 68.

The judgment against the Bunyeas, standing alone, proves nothing against any insurer. The judgment, without some evidence of facts behind it, equally could be for a debt owed upon a note, or for a liability some other insurer has agreed to cover. The only way the plaintiffs could show what the judgment was for was to put on evidence. *General Cas. Co. of Wis.,* supra, 196 F2d at 173. This they proceeded to do by offering in evidence the pleadings upon which they prevailed in the former case.

The only inference permissible from the fragmentary Deschutes County record is that the plaintiffs successfully maintained before the jury in Deschutes County that the transportation of the trailer was hired for a valuable consideration and was not part of a common undertaking. Such a state of affairs was not within the hazards the present defendant insured against.

■■ It is well settled that the pleadings may be introduced to show what was adjudicated, and in the absence of conflicting evidence they are, of course, conclusive. It is elementary law that the relief granted must necessarily be responsive to and in conformity with the pleadings and proof. *Bingham et ux. v. Weber and Linn et ux.,* 197 Or 501, 511, 254 P2d 219; *State ex rel. Dean v. Dean,* 136 Or 694, 697-698, 300 P 1027, 86 ALR 79; *Hine v. Board of Com'rs of McClain County,* 188 Okla 260, 108 P2d 112; *Angola State Bank v. State ex rel. Sanders,* 222 Ind 244, 52 NE2d 620; *Messier v. Ledoux,* 86 NH 115, 164 A 217.

The plaintiffs' complaint in the prior action alleged

that defendants negligently violated their duty as a carrier for hire. Carriage for hire was "essential" to the first judgment, not because legal liability could not have been imposed without it, but because that was the only issue relevant to legal duty offered to the Deschutes County jury.

When it is seen that the plaintiffs' case in chief not only failed to prove a judgment resting upon an insured state of facts, but went further and proved that their judgment rested upon an uninsured state of facts, the plaintiffs relieved the defendant of the burden of proving collateral estoppel. This court has recently held in an action by the insured against his indemnitor that if the earlier action rested upon a fact fatal to recovery in the action over against the indemnitor, the latter action could not be successfully maintained. *Macdonald v. United Pacific Ins. Co.*, 210 Or 395, 311 P2d 425. There the insured settled with a claimant prior to judgment in an action against himself for assault and battery. His insurance excluded coverage for willful assaults. We held there was neither a duty to defend the action nor a duty to pay if a judgment had been recovered, when it appeared on the face of the pleadings in the first action that the grounds upon which the injured party sought damages were excluded from the contract of insurance.

■ Statutes like ORS 736.320 which permit third-party-beneficiary actions by judgment creditors of insured tort-feasors are held to give the injured plaintiff the same, but not necessarily greater, rights than the insured had under his contract. *Allegretto v. Or. Auto Ins. Co.*, 140 Or 538, 13 P2d 647; *New Jersey Fidelity & Plate Glass Ins. Co. v. Clark*, 33 F2d 235 (9th Cir 1929).

It is immaterial in this case whether the insurer actually managed the defense in the Deschutes County action or took part therein. It is conceded that the insurer had notice of the action and the opportunity to defend. From a reading of the complaint in the Deschutes County action, it is apparent that this insurer would have been justified in beliving that the plaintiffs were bringing an action against the insured upon a state of facts not covered by its policy. Under such circumstances, the insured would not be bound to defend. *MacDonald v. United Pacific Insurance Co.*, 210 Or 395, supra. In the MacDonald case we quoted the following:

> " 'It appears to be well settled that, generally speaking, the obligation of a liability insurance company under a policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint in such action. The following cases support this rule.' 50 ALR2d 465, § 4." 210 Or at 400.

In the same case this court observed that cases might arise in which there was no duty to defend but in which the ultimate proof might show a duty to pay. This is not such a case. The proof in the Deschutes County case must be presumed, in the absence of evidence to the contrary, to have conformed to the pleadings. The pleadings clearly took the case out of the coverage of the defendant's insurance policy.

■ The evidence in the case at bar proved that the judgment sued upon was founded on an incident expressly excluded from the coverage of the insurer's contract with the judgment debtor. There was no conflict in the evidence on this point. The evidence was that of the plaintiffs. The plaintiffs later called

Mrs. Bunyea to testify that the plaintiffs' story in Deschutes County was not true. But this testimony, interesting though it may be, does not overcome the presumption that the Deschutes County judgment rests upon the Deschutes County pleadings. If the judgment in Deschutes County had determined the circumstances to be as the plaintiffs now allege (and as the Bunyeas have consistently maintained), such determination would have been binding upon the insurer in this case. *East v. Fields,* 42 Wash2d 924, 259 P2d 639. Numerous cases in support of this general rule are collected and commented upon in the Annotation, 24 ALR2d 329. It seems equally clear that the determination in Deschutes County that the accident did not occur under the circumstances now claimed to have been in existence is equally binding upon the indemnitor and the judgment creditor. *Builders Supply Co. v. McCabe,* 366 Pa 322, 77 A2d 368, 24 ALR2d 319. The estoppel of the judgment is mutual. *American Candy Co. v. Aetna L. Ins. Co.,* 164 Wis 266, 159 NW 917.

Collateral estoppel was proved in the case at bar, but by the plaintiffs themselves. Their uncontradicted evidence, in the form of the Deschutes County pleadings, proved that their judgment was founded upon a factual situation which was not within the hazards insured against by this particular defendant. Accordingly, the trial court was not at liberty to disregard the uncontradicted proof of facts subjacent to the judgment and substitute new facts, possibly more closely resembling the true ones, in order to bring the plaintiffs' judgment under the terms of the defendant's engagements to pay.

Reversed.

O'CONNELL, J., dissenting.

The majority takes the position that because the complaint in the former action contained an allegation that plaintiffs' trailer was being transported for hire the verdict in that action must be regarded as having been rendered on the basis of that allegation unless plaintiffs can prove to the contrary. In the present action, through the testimony of Mrs. Bunyea, plaintiffs attempted to prove that the facts supporting the verdict and judgment in the former action described a joint enterprise and not a bailment for hire. But, says the majority, this evidence cannot be used to support plaintiffs' allegation that the policy covered the accident because the evidence is not proof that the verdict and judgment were rendered on the basis of such alleged facts of common enterprise.

However, it must be kept in mind that the complaint in the former action, after reciting the bailment for hire, alleged that the Bunyeas were negligent in several particulars and these specifications of negligence do not recite that the Bunyeas were negligent as bailees for hire; rather they describe acts of negligence as consistent with a joint enterprise as with a bailment for hire. But the majority selects the part of the complaint that is most damaging to plaintiffs in the present action and forces them to prove that the verdict was not based upon that part. This, the majority demands of the plaintiffs, in the same breath as it announces that the burden of proof to establish a collateral estoppel is not on the plaintiffs here but is upon the defendant insurance company.

The net result of this application of the rules of proof is to change the law of collateral estoppel so as to relieve the estoppel asserter of the burden of proof and cast it upon the person against whom the

estoppel is asserted. This runs counter to the universal rule elsewhere.

The correct analysis of the collateral estoppel problem is as follows: The allegation of a bailment for hire was not essential to the verdict and judgment because the verdict could have been (and might well have been) based upon the assumption that the plaintiffs and the Bunyeas were engaged in a joint enterprise—the precise theory which the Bunyeas adopted in their answer in the first action. Since the alleged fact of bailment for hire was not essential to the judgment the doctrine of collateral estoppel does not apply, although the allegations of bailment for hire in the first action can be used against the plaintiffs in the present action as an evidentiary admission which the trier of fact can consider in deciding what relationship actually existed.

The opinion which follows, except for minor changes to reflect my dissent, was prepared originally to express the views of the court. However, it did not receive the support of most of my brethren and therefore it must appear as a dissent.

Plaintiffs bring this action to recover under the indemnity provision of a policy of liability insurance issued by defendant insurance company to Robert and Elsie Bunyea, doing business as the Agate Beach Trailer Sales in Newport, Oregon. In a previous action brought in Deschutes county plaintiffs recovered a judgment in the amount of $5,800 against the Bunyeas for damage to plaintiffs' trailerhouse suffered while it was being towed by a truck belonging to the Bunyeas. Upon the basis of that judgment plaintiffs seek to recover in the present action the sum of $5,000, the limit of the policy issued by the defendant insurance company to the Bunyeas. Trial was had before the

court sitting without a jury. Defendant appeals from a judgment for plaintiffs.

The principal issue on appeal is whether the policy covers the hazard which caused plaintiffs' damage. The circumstances under which the Bunyeas undertook to tow plaintiffs trailerhouse are important in the determination of the issue.

The Bunyeas were engaged in the business of selling automobile trailers. In carrying on their business it was necessary to tow their own trailers as well as those owned by others. For this and other uses relating to the trailer sales business they used a Ford pickup which was covered by the policy in question.

On September 28, 1956, the Bunyeas and plaintiffs entered into an oral agreement, the exact terms of which are in dispute, by which the Bunyeas agreed to tow plaintiffs' trailer from Winchester Bay to Madras, Oregon. Pursuant to this arrangement plaintiff Edward Jarvis and Robert Bunyea started for Madras, using the Bunyeas' Ford pickup as the towing vehicle. The damage to plaintiffs' trailer occurred en route while Edward Jarvis was driving.

In the Deschutes county action brought by plaintiffs against the Bunyeas the complaint contained the following allegation:

"That on or about the 28th day of September, 1956, the plaintiffs, for a valuable consideration, hired the defendants as a commercial carrier to tow the said trailer, containing the aforesaid furniture, furnishings and personal effects, from Winchester Bay, Oregon, to Madras, Oregon. That on said date, the said defendants, for valuable consideration paid to them by the plaintiffs, undertook to tow said trailer behind the defendants' 1950 Ford one-half ton pickup. That as a part of the consideration for said hiring, defendants employed

522

plaintiff, Edward Jarvis, to assist defendant, Robert Bunyea, in driving the towing vehicle. That during the trip herein mentioned the said towing vehicle and trailer were under the exclusive control and direction of the defendants."

The complaint also contained the following specification of negligence:

"That the defendants were negligent, careless and reckless in the following particulars:

"(a) In operating said pickup and trailer without properly connecting the brake system of said trailer to the pickup, to-wit: in failing to use a plug into the pickup;

"(b) In operating said pickup and trailer with an excessively long trailer hitch between the said trailer and pickup, thereby causing an improper weight distribution;

"(c) In towing said trailer with a pickup weighing less than 3,700 pounds, and in failing to warn plaintiffs that the Oregon Highway Commission rules and regulations required said vehicle to be of a minimum of 3,700 pounds;

"(d) In failing to load said pickup with sufficient counter weight to provide a proper weight distribution between the said trailer and pickup;

"(e) In failing to warn the driver of said pickup, the said Edward Jarvis, that said pickup and type of hitch between the pickup and trailer would not be sufficient to prevent violent swaying;

"(f) In failing to periodically examine, during said trip, said connection to assure its operating properly;

"(g) In failing to warn the said Edward Jarvis that the brakes on the trailer would not operate properly without a plug being inserted in the pickup * * *."

The Bunyeas' answer denied each of the allegations

of plaintiffs' complaint and further alleged by way of counterclaim, as follows:

"That on or about the 28th day of September, 1956 plaintiffs offered to employ defendant Robert Bunyea to tow plaintiffs' 1955 Angelus 40 foot housetrailer from Winchester Bay, Oregon to Madras, Oregon; that said defendant refused said offer on the ground and for the reason that he was not then or had he ever been engaged in business as a commercial carrier for hire; that thereupon plaintiffs promised said defendant that if he, the said defendant Robert Bunyea, would tow said trailer to Madras, that plaintiff Edward Jarvis would secure access to certain restricted hunting areas in Deschutes County where said defendant could hunt for deer, the season for which would open the following day, September 29, 1956.

"That in consideration of said promise to provide hunting facilities and in further consideration of plaintiffs' promise to pay for all necessary gasoline and oil, said defendant agreed that his 1950 Ford one-half ton pickup could be used, without any additional charge or compensation, to tow said trailer as aforesaid."

Plaintiffs' reply generally denied each of the foregoing allegations.

In the present action plaintiffs recite in their complaint the recovery of the judgment against the Bunyeas, the issuance of the policy of insurance by defendant to the Bunyeas covering the Ford pickup and the application of the policy to the injury for which plaintiffs received judgment in the action against the Bunyeas. The defendant's answer sets up as a defense the exclusion clauses of the policy. The applicability of these exclusion clauses is the ultimate issue in this case.

The main policy is entitled, "Comprehensive

Multiple Liability Policy." We shall refer to that instrument as the "basic policy." Attached to the basic policy are six endorsements which extend coverage. The basic policy contains the following insuring agreement:

> "Coverage B—Property Damage Liability—Automobile
>
> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

But the basic policy contains the following exclusion clause:

> "This policy does not apply:
>
> \* \* \* \* \*
>
> "(d) under coverage B, to injury to or destruction of property owned by, rented to, in charge of or transported by the insured."

It is conceded by plaintiffs that if the basic policy is controlling the exclusion set out above would bar the present action. However, plaintiffs contend that the exclusion clause in the basic policy is modified by two of the endorsements, only one of which we need to consider. It is endorsement No. 1 entitled "Garage Comprehensive," the pertinent parts of which read as follows:

> "It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability applies to the hazard defined below, subject to the following provisions:
>
> "*A. Hazard Defined.*
>
> "The ownership, maintenance or use of the premises for the purpose of an automobile sales agency, repair shop, service station, storage garage or public parking place, and all operations necessary or

incidental thereto; and the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for non-business purposes of (1) any automobile owned by or in charge of the named insured and used principally in the above defined operations, and (2) any automobile owned by the named insured in connection with the above defined operations for the use of the named insured, a partner therein, an executive officer thereof, or a member of the household of any such person."

"The foregoing definition does not include:
* * * * *

"(2) the use by the insured of any automobile as a public or livery conveyance, or for carrying property for a charge; or any aircraft * * *."

Endorsement No. 1 also provides that "[n]othing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated."

Defendant would concede that if the exclusion clause in the endorsement is not applicable plaintiffs would be entitled to recover. Defendant contends, however, that the applicability of the exclusion provision is conclusively established in the present case. Specifically, defendant contends that the evidence in the present action and the pleadings and judgment in the prior action brought by plaintiffs against the Bunyeas conclusively establish that the Ford pickup was being used in this instance "for carrying property for a charge" within the meaning of the exclusion clause.

The lower court, as the trier of fact, found that plaintiffs' trailer was not being transported "for a charge" at the time of the accident. The court's findings of fact in this regard are as follows:

"5. At the time that the plaintiffs' trailer house

was damaged, the plaintiffs, Edward and Virginia Jarvis, and Robert and Elsie Bunyea were in the process of a mutually advantageous trip to Madras, Oregon. The plaintiffs were having their trailer moved and Robert Bunyea was to receive the right to hunt deer on private property of friends of the plaintiff.

"6. Both Edward Jarvis and Robert Bunyea contributed something toward the expenses of the trip by way of either cash, equipment, or personal assistance."

Defendant's various assignments of error attack these findings of fact on the ground that they are inconsistent with the undisputed evidence in the case.

Defendant apparently relies upon three rules or doctrines to support its position: (1) collateral estoppel, (2) a related rule of judicial estoppel precluding a party, under certain circumstances, from asserting inconsistent positions in separate actions, and (3) the rule that one is bound by his judicial admissions made in the same action.

The doctrine of collateral estoppel is defined in Restatement, Judgments, § 68 (1942):

"(1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action, except as stated in §§ 69, 71 and 72.

"(2) A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to questions of fact not actually litigated and determined in the first action."

It will be noted that the rule, as stated in the Restatement, applies only where the parties to the successive actions are the same. The defendnat in the

present action was not a party to the former action against the Bunyeas. However, a person not a party to a former action but who is in privity with one who was a party to the prior action may, in most cases, rely upon the rule of collateral estoppel. Restatement, Judgments, § 83 (1942).

The nature of the connection which a person must have with a party to the prior action before he qualifies as his privy is not entirely clear. It has been held that an indemnitor is in privity with his indemnitee against whom the former action was brought. *Jones v. Zurich General Accident & Liability Ins. Co.*, 121 F2d 761, 763 (2nd Cir 1941); *Maryland Casualty Co. of Baltimore v. Sturgis*, 198 Ark 574, 129 SW2d 599, 600, 123 ALR 704 (1939); *Sanitary Dist. v. U.S.F. & G. Co.*, 392 Ill 602, 612, 65 NE2d 364 (1946). But cf., *Farm Bureau Mut. Automobile Ins. Co. v. Hammer*, 177 F2d 793 (4th Cir 1949), commented upon in note, Res Judicata: Judgment Against Insured as Conclusive Against Insurer, 4 Okla L Rev 125 (1951); *Lowery v. Zorn*, 184 La 1054, 168 So 297 (1936). I shall regard defendant in the present case as standing in privity with the Bunyeas for the purpose of asserting a collateral estoppel and shall turn now to the question of whether plaintiffs here are so estopped.

Defendant argues that in the present action plaintiffs are bound by the allegations contained in the complaint in the previous action brought against the Bunyeas. That complaint in effect alleged that for a valuable consideration plaintiffs hired the Bunyeas as a commercial carrier to tow plaintiffs' trailer and that the towing vehicle and the trailer were under the exclusive direction and control of the Bunyeas during the course of the trip from Winchester Bay to Madras.

If plaintiffs are bound by the allegation in the prior action that the Bunyeas operated the Ford pickup in this instance as a commercial carrier, i.e., as a "common carrier" in the language of the policy, then certainly the exclusion clause of the endorsement would apply and the trial court's finding could not be sustained. Similarly, if the allegation in the prior action that plaintiffs hired the Bunyeas "for a valuable consideration" is construed to mean that the Bunyeas were hired to carry property "for a charge," also the language of the policy, and if plaintiffs are bound in this action by that former allegation, the exclusion clause of the endorsement would apply and the trial court's finding could not be sustained.

But the rule of collateral estoppel does not bind plaintiffs to the assertions made in those allegations. The question of the status of the Bunyeas, i.e., as either a common or a private carrier, presented by the allegation that plaintiffs hired the Bunyeas "as a commercial carrier," would appear to be a question of law. Ordinarily determination of questions of law are not conclusive in a subsequent action based upon a different cause of action, even where the later action is between the same parties, except in most cases where both causes of action arose out of the same transaction or subject matter. Restatement, Judgments, § 70 (1942).

However, it is not necessary to decide whether these allegations presented a question of law in the former action. Treating both allegations referred to above as presenting questions of fact, the plaintiffs are not, under the rule of collateral estoppel, bound by them in the present action. Collateral estoppel, as usually defined, operates to conclude a question of fact raised in a prior action only where the question

was essential to the judgment in the prior action, *State of Oregon v. Dewey,* 206 Or 496, 504, 292 P2d 799 (1956); *E. V. Prentice Mach. Co. v. Associated Plywood Mills,* 252 F2d 473, 477 (9th Cir 1958), Cert. Den., 356 US 951, 78 S Ct 917, 2 L Ed2d 844 (1958); *Chapman v. Hughes,* 134 Cal 641, 654-655, 58 P 298, 60 P 974, rehearing granted 61 P 76, reversed on other grounds, 66 P 982 (1901); Restatement, Judgments, § 68, comment o (1942); See, *Clawson et ux v. Prouty et ux,* 215 Or 244, 250, 333 P2d 1104 (1959); *Haney et al v. Neace-Stark Co. et al,* 109 Or 93, 119, 216 P 757, 219 P 190 (1923), and the question was actually litigated. *State of Oregon v. Dewey,* supra; *Wagner v. Savage, as Adm'r.,* 195 Or 128, 147, 244 P2d 161 (1952); *Stillwell v. Hill,* 87 Or 112, 116-117, 169 P 1174 (1917); *Campbell's Gas Burner Co. v. Hammer,* 78 Or 612, 617, 153 P 475 (1915); Restatement, Judgments, § 68, comments c and d (1942).

Except for the pleadings the record in the prior action was not introduced into evidence in the present case and consequently we do not know what issues were actually litigated in the action against the insured. The burden of proving the essential elements of a collateral estoppel is upon the estoppel asserter. *Haney et al. v. Neace Stark Co. et al.,* 109 Or 93, 123-124, 216 P 757, 219 P 190 (1923); Restatement, Judgments, § 68, comment 1 (1942). The defendant did not meet this burden. Even if we should not dogmatically insist upon the requirement that the issue be actually litigated, see, Comment, Developments in the Law— Res Judicata, 65 Harv L Rev 818, 841 (1952); Comment, Collateral Estoppel by Judgment, 52 Columbia L Rev 647, 652-654 (1952), the defendant fails to make out a case of collateral estoppel here. It would still be necessary to show that the question of fact which

defendant relied upon as having been adjudicated was "essential to the judgment." Restatement, Judgments, § 68, comment o (1942), and see cases cited in preceding paragraph.

The fact which defendant alleges, and upon which it in essence relies, is that the Bunyeas' status was that of bailees for hire. And, defendant contends, the litigation of that issue in the prior action was tantamount to an adjudication that the Bunyeas were "carrying property for a charge." But the question of whether the Bunyeas were bailees for hire, even if we assume that the issue was actually litigated in the first action, was not essential to the verdict and judgment rendered in that action. It is true that as bailees for hire the Bunyeas would have had a higher duty of care than they would have had as gratuitous bailees or as co-adventurers, and it is possible that the jury would not have found them liable but for their status as bailees for hire. But that demonstrates only that the jury may have regarded the Bunyeas' status as bailees for hire as being *material*—it does not establish that such status was essential to the verdict and judgment.

In an action brought to recover damages to a chattel based upon the alleged negligence of the bailee (as was the action brought against the Bunyeas) it is not essential to a verdict and judgment that plaintiff prove that the defendant was a bailee for hire. The bailee of goods bailed as an incident of a joint venture, although held to a less exacting standard of care than a bailee for hire, is liable for injuries to the chattels cause by negligence, and this is nonetheless true even though the complaint alleges that the defendant was a bailee for hire. An instruction to the jury making a verdict for the plaintiff contingent

upon a finding that the defendant was a bailee for hire would have constituted error. An instruction could not properly go beyond a statement that the defendant's duty of care would be higher if he was found to be a bailee for hire. It is my conclusion that the question of fact relied upon by defendant was not essential to the judgment. I would hold, therefore, that the rule of collateral estoppel does not apply in this case. This conclusion is in accord with the one case which we have found presenting the same salient facts and issues. In *Lowery v. Zorn*, 184 La 1054, 168 So 297 (1936), the plaintiffs were injured while riding in a truck transporting their furnishings. Plaintiffs had contracted to pay $75 for the carriage and alleged that they were passengers for hire—in effect contending that the $75 charge was in part for the transporting of the plaintiffs' persons. Plaintiffs recovered a judgment against the insured and upon the garnishment proceeding against the insurer it was held that the allegation that plaintiffs were passengers for hire was an evidentiary rather than a conclusive admission.

Defendant's brief broadly states the proposition that plaintiffs are bound by their pleadings in the previous action. There are cases which hold that a party may be precluded from taking a position in a subsequent action inconsistent with a position taken by him in a previous action even in the absence of the elements necessary to give rise to the rule of collateral estoppel. This principle precluding a party from taking inconsistent positions is sometimes described as "judicial estoppel."

The rationale for the rule, the circumstances under which it will be applied, and the extent to which

it is recognized in the various jurisdictions is difficult to determine because it is often confused with the doctrines of res judicata, collateral estoppel, estoppel in pais and judicial admissions. Even the standard treatises on evidence and pleading do not always clearly identify this principle of preclusion, separate and apart from the doctrines last mentioned. 2 Jones, Evidence (1958) § 370; McCormick, Evidence (1954) § 242; 4 Wigmore, Evidence (3rd ed 1940) § 1066. Cf., Clark, Code Pleading (2nd ed 1947) 253-258, 629-632. Perhaps the clearest statement of the rule is found in the legal periodicals. Thus in a note in 59 Harv L Rev 1132 (1946) entitled "The Doctrine of Preclusion Against Inconsistent Positions in Judicial Proceedings," it is said:

"* * * There are * * * a series of cases in which the courts have precluded a person from framing his testimony or pleadings in a manner inconsistent with a position taken in a prior proceeding even though one or both parties were different and no relationship of privity existed. These cases are based upon the principle that a litigant should not be permitted, either by passive consent or by affirmative action, to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise."

In a comment entitled, "Developments in the Law—Res Judicata," 65 Harv L Rev 818, 823-824 (1952), it is explained that:

"The rule * * * is not based on the policies against relitigation, but on a desire to preserve the dignity of judicial proceedings by preventing the successive assertion of factually contradictory statements as the truth. This is a form of estoppel based on the conduct of the party rather than the court * * *. Unlike res judicata, it operates

regardless of finality of the original proceedings or identity of the parties, and it applies only to positions taken on the facts, not inconsistent points of law. Some courts apply the rule only where the position was successfully maintained, while others do not require success if the second action has some connection with the first."

See also, Beck, Estoppel Against Inconsistent Positions in Judicial Proceedings, 9 Brooklyn L Rev 245 (1940).

The rationale supporting the rule as announced in the cases is difficult to isolate. Sometimes it is stated in terms of estoppel in pais, an essential element of which is a detrimental change in position upon the part of the estoppel asserter. *Themper v. Themper,* 132 Conn 547, 550, 45 A2d 826 (1946); *Chauvin v. American Mut. Liability Ins. Co.,* 17 La App 187, 134 So 450, 454 (1931); *Blackburn v. Blackburn,* 163 SW2d 251, 255-256 (Tex Civ App 1942); *Tracy Loan & Trust Co. v. Openshaw Inv. Co.,* 102 Utah 509, 132 P2d 388, 390-391 (1942). Frequently the pronouncement of the rule is accompanied by a statement of various other limitations upon its application. Thus in *Colvert Ice Cream & Dairy Products Co. v. Citrus Products Co.,* 179 Okla 285, 288, 65 P2d 455, 458 (1937), it is said:

"* * * It is a general rule that a position taken in an earlier action estops the one taking such a position from assuming an inconsistent position in a later action. 21 C.J. 1228 et seq. But there are certain essentials to the establishment of such an estoppel: (1) The inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions the same; (5) the party claiming estoppel must have been mislead, and have changed his position; and (6) it must appear unjust

to one party to permit the other to change. See 10 R.C.L. 702, sec. 29, and notes."

It has been said that the basis for the so-called estoppel "arises out of the need to preserve the dignity of judicial proceedings and [to] uphold the sanctity of the oath," Note, 59 Harv L Rev 1132, 1133 (1946); *Grier v. Canada,* 119 Tenn 17, 36, 107 SW 970 (1907); *Hamilton v. Zimmerman,* 37 Tenn 39, 48 (1857), or that it is "born of the necessity of orderly administration of our judicial system," Beck, 9 Brooklyn L Rev 245, 248 (1940). *In re Allison's Estate,* 106 NJ Eq 55, 150 A 52, 56 (1930). Frequently the rule is expressed in terms of an ethical concept that one should speak the truth or at least that he "should not be permitted to 'blow hot and cold' with reference to the same transaction, or insist, at different times, on the truth of each of two conflicting allegations, according to the promptings of his private interest." Broom, A Selection of Legal Maxims (2nd ed 1850) 119. In many of the cases it is not clear whether the court's insistence that a party take a consistent position is based solely upon the court's moral predilection (sometimes expressed in terms of not allowing a party to play "fast and loose" in court), *Davis v. Cornwall,* 68 F 522, 525 (2nd Cir 1895), Cert. Den., 163 US 683, 16 S Ct 1200, 41 L Ed 310; *In re Allison's Estate,* supra; *McAuslan v. Union Trust Co.,* 46 R I 176, 125 A 296, 301 (1924), or because the opposing party in the action had changed his position to his detriment in reliance upon the previous assertion, *In re Davis v. Cornwall,* supra; *McAuslan v. Union Trust Co.,* supra.

Undoubtedly contributing to the vagueness of the boundaries of this principle of preclusion is the fact that it is frequently confused with judicial admissions. A judicial admission is the admission of a fact which

is made in the pleadings, stipulations or testimony of a party in the judicial proceeding in which it is offered; McCormick, Evidence (1954), p. 504; 9 Wigmore, Evidence (3rd ed 1940), §§ 2588 et seq; an admission made in a proceeding other than that in which it is offered is an evidential, not a judicial admission. McCormick, Evidence (1954) p. 512; 4 Wigmore, Evidence (3rd ed 1940), § 1066. Judicial admissions are conclusive upon the party making them, *Bockman v. Mitchell Bros. Truck Lines,* 213 Or 88, 97-98, 320 P2d 266, 69 ALR2d 152 (1958); McCormick, Evidence, (1954), p. 504; 4 Wigmore, Evidence (3rd ed 1940) § 2590; evidential admissions, or as they are sometimes called, "quasi-admissions" (4 Wigmore, Evidence (3rd ed 1940) §§ 1058 et seq.) are, properly considered, not conclusive, but are admissible simply as an item of evidence to show the inconsistent positions taken by the opponent in the two actions. The distinction is expressed in the following excerpt from 4 Wigmore, Evidence (3rd ed 1940), § 1066, p. 59:

"The use here discussed, of informal or quasi-admissions, has nothing to do with the use of *pleadings as solemn or judicial admissions* (*ante,* § 1057). The latter are conclusive in their nature; but that effect is confined to the cause in which they are made. When used in other causes as ordinary admissions, they are of course (on the principle of §§ 1058, 1059, *ante*) *not conclusive* * * *."

And again in § 1059, p. 21, where it is said:

"(1) A quasi-admission, of the present sort, being nothing but an item of evidence, is therefore *not in any sense final or conclusive.* The opponent, whose utterance it is, may none the less proceed with his proof in denial of its correctness; it is merely an inconsistency which discredits, in a greater or less degree, his present claim and his other evidence.

"No one would ever have entertained doubts on this point, had not the two doctrines noticed in the preceding sections tended, by their superficial resemblance to the present doctrine, at certain points to produce confusion—namely, the doctrines of estoppel and of judicial admission. An Estoppel, i.e. a representation acted on by the other party, by creating a substantive right does oblige the estopped party to make good his representation, —in other words, but inaccurately, it is conclusive. So, too, but for an entirely different reason, a Judicial Admission is conclusive, in the sense that it formally waives all right to deny, for the purposes of the trial, i.e. it removes the proposition in question from the field of disputed issues. But statements which are not estoppels nor judicial admissions have no quality of conclusiveness, and on principle cannot have.

"This has always been conceded by the judges, in modern times."

Unfortunately, the distinction is not always observed and consequently there are a substantial number of cases, as indicated above, which hold that a party's testimony or pleadings in a former action bind him conclusively in a subsequent action. In most of the cases the question of the conclusiveness of the prior pleading is not raised, the only question considered being whether the prior pleading is admissible in evidence. See Annotation: Admissibility of pleading as evidence against pleader, on behalf of stranger to proceedings in which pleading was filed, 63 ALR2d 412 (1959).

We have, then, a choice in the present case of adopting either a principle of preclusion in the form of a "judicial estoppel," or a principle of evidence. I am of the opinion that an inconsistent statement made in a pleading in a separate action should be treated as an evidentiary admission subject to explanation or con-

tradiction in a subsequent action. This is the view adopted in a majority of cases and by the text writers. *Dixie Sand & Gravel Corporation v. Holland,* 255 F2d 304, 310 (6th Cir 1958), 269 F2d 495 (6th Cir 1959); *Frank R. Jelleff, Inc. v. Braden,* 233 F2d 671, 675-677 (D. C. Cir 1956); *Parkinson v. California Company,* 233 F2d 432, 437, 438 (10th Cir 1956); *Rogers v. Edward L. Burton & Co.,* 137 F2d 284, 286 (10th Cir 1943); *Missouri Pacific Railroad Co., Thompson, Trustee v. Zolliecoffer,* 209 Ark 559, 562-563, 191 SW2d 587 (1946); *Bartolotta v. Calvo,* 112 Conn 385, 152 A 306, 310 (1930); *Farley v. Frost-Johnson Lumber Co.,* 133 La 497, 63 So 122, 137 (1913); *Himelson v. Galusz,* 309 Mich 512, 15 NW2d 727, 730-731 (1944); McCormick, Evidence (1954), p. 512; 4 Wigmore, Evidence (3rd ed 1940) § 1066. See, Comment, Developments in the Law Res Judicata, 65 Harv L Rev 818, 823-824, n. 30 (1952); Note, The Doctrine of Preclusion Against Inconsistent Positions in Judicial Proceedings, 59 Harv L Rev 1132, 1136 (1946). Cf., *Hatten Realty Co. v. Bayliss et ux.,* 42 Wyo 69, 290 P 561, 566, 568, 72 ALR 587 (1930).

The rule of preclusion has little to support it. As observed above, it is founded upon broad notions of the need for maintaining the dignity of the courts and for preserving reverence for the sanctity of an oath—reasons generally pronounced by the courts in a tone of moral indignation, *Wills v. Kane,* 2 Grant's Cas. 60, 63 (Pa 1853). The error in this approach is that it overlooks the fact understood by all lawyers that many of the assertions made in pleadings, albeit under oath, do not purport to be statements of ultimate truths but are advanced by the pleader simply with the hope that he will be able to present evidence to support them. Pleadings commonly contain allegations designed to support a theory of law which the pleader has little

or no hope of supporting. Since lawyers and courts understand and accept as a part of the adversary system these tactical functions of pleadings, it cannot be said that any moral question is at stake. The same thought is expressed in the following excerpt from *Farley v. Frost-Johnson Lumber Co.*, 133 La 497, 542, 63 So 122, 137 (1913):

> "At common law the point has never been doubtful; the rule has always been that while admissions made in other suits are of course evidence, as being declarations against interest, and therefore presumably true, they are no more conclusive, or estoppels, than admissions made out of courts. In fact, the only doubt has been as to whether they were admissible in evidence at all, when contained in pleadings at law, owing to the necessity under which a party often finds himself in his pleadings at law to make statements not because of his knowing them to be true, but in order to meet possible contingencies, or developments, in the case, with regard to which he has no information and yet is required to plead with positiveness of assertion."

The question of the conclusiveness of a party's *testimony* in another action (as distinguished from his pleadings) might present other considerations. It is possible that in a subsequent action a party should be bound by a previous judicial statement of fact unequivocally made and within his own peculiar knowledge, cf., McCormick, Evidence (1954) p. 514, but we are not called upon in the present case to pass upon that question.

Where the assertion is made in *pleadings* filed in another case the assertion, although contradictory to the position taken by the party in a subsequent action, should not be conclusive against him. However, this is limited to the situations where the two actions are separate and distinct. Where the subsequent pro-

ceeding is a continuation of the first, as in the case of a new trial, the doctrine of judicial admissions may, in the proper case, be applicable. 9 Wigmore, Evidence (3rd ed 1940) § 2593.

The cases support this conclusion and I now turn to a consideration of them. First, it should be observed that where the previous pleading contains allegations of *law* it is almost universally recognized that a party is not precluded in a subsequent action from taking an inconsistent position. *Lapeer Trailer Corporation v. Freuhauf Trailer Co.,* 24 F2d 595, 597 (D.C. E.D. Mich 1927) (suit for patent infringement; plaintiff purchased the patent in question after unsuccessfully defending an infringement suit upon the ground that the patent was void—"it would be a dangerous doctrine, both for litigants and counsel, to say that they were bound by their judicial assertions of what the law is or is not"); *Binder v. Wlaskolin,* 234 Mich 672, 209 NW 82 (1926) (lessor unsuccessful in ejectment suit against lessee not estopped to sue for rent); *Ervin v. Davis,* 355 Mo 951, 199 SW2d 366, 370 (1947) (creditor who in prior action alleged that deed of trust given to secure loan was valueless because of limitation in debtor's deed held not estopped to have trust deed adjudged enforceable); *Wadleigh v. Hawson,* 88 N H 365, 189 A 865, 867 (1937) (retailer being sued for food poisoning not estopped to assert rule that violation of pure food law is not negligence per se although having contended the opposite in prior action against his supplier); *Wilford v. Sigmund Eisner Co.,* 13 N J Super 27, 80 A2d 222, 225-226 (1951) (employer who defended tort action upon ground that plaintiff's exclusive remedy was under the compensation act not estopped in later compensation proceedings to deny that plaintiff suffered a compensable acci-

dent); *David S. Stern Corp. v. Richard Nathan Corporation*, 42 NYS2d 249, 252 (Supreme Ct. 1943) (defendant who sucessfully excluded evidence of plaintiff's costs in proceedings for summary judgment held not estopped to raise defense of res judicata in later proceedings—"such estoppel may result from taking inconsistent positions on question of fact but not on questions of law or rules of evidence"); *Holland v. Perrault*, 312 P2d 976 (Okla 1957) (plaintiff who unsuccessfully in prior action contended transaction constituted a sale of stock not estopped to later contend that the transaction gave rise to a contract of employment); *Southern Coal & Iron Co. v. Schwoon*, 145 Tenn 191, 239 SW 398 (1921) (plaintiff who was successful in prior action to correct assessment on ground that lands were owned by others who were paying tax assessments not estopped to maintain suit for ejectment); Note, The Doctrine of Preclusion Against Inconsistent Positions in Judicial Proceedings, 59 Harv L Rev 1132, 1136 (1946). It would seem that a similar result should be reached when the question is one of so-called mixed law and fact.

Where the previous pleading contains allegations of fact, the taking of a subsequent inconsistent position is allowed in most jurisdictions, the degree of inconsistency ranging from a sharp conflict between two unequivocal assertions of fact susceptible to observation and definite proof to the indistinct differences arising out of equivocal statements or expressions of opinion. *Tracy Loan & Trust Co. v. Openshaw Inv. Co.*, 102 Utah 509, 132 P2d 388 (1942) (Suit by administrator of father's estate against son who claimed ownership of stock. In prior divorce action son denied his ownership of the stock and in further proceedings before referee he obtained reduction of alimony on basis

of poverty. Held: son not estopped to claim ownership.); *Fox v. Weissbach*, 76 Ariz 91, 259 P2d 258 (1953) (Wife who, in divorce action, alleged automobile to be community property not estopped in later action to contend, as against community creditor, that the automobile is her separate property.); *Blackburn v. Blackburn*, 163 SW2d 251 (Tex Civ App 1942) (Husband in suit for divorce and division of property not estopped to claim certain property as being his separate property although in a prior similar action brought by him and which was voluntarily dismissed he alleged that the property was community.); *Parkinson v. California Company*, 233 F2d 432 (10th Cir 1956) (Suit by consumer against manufacturer and middleman for injuries from gas explosion. In first complaint filed in state court consumer named manufacturer, middleman and retailer and alleged that explosion was caused by carelessness of retailer's employee and that gas had not been malodorized. Consumer's motion to dismiss the state action without prejudice against manufacturer and middleman was granted. Held: consumer's allegations in first action were merely evidence that explosion was caused by retailer's supervening negligence.); *Walsh v. New York Cent. & H. R. R. Co.*, 204 NY 58, 97 NE 408 (1912) (Plaintiff was struck by an Erie Railroad train operated on defendant New York Central's track. In prior action against Erie plaintiff alleged that the negligence of Erie was the sole cause of the accident. Held: the allegation was only an evidentiary admission and not an estoppel.); *McNeil v. Dow*, 89 Cal App2d 370, 200 P2d 859 (1948) (Plaintiff in prior complaint in separate pending action alleged that defendant as owner of one-half interest was liable for one-half of plaintiff's expenditures for the benefit of the property.

Plaintiff now claims to be owner of the entire interest. Held: allegations in the prior complaint are evidentiary admissions, not estoppels.); *Sun Oil Co. v. Smith,* 216 La 27, 43 So2d 148 (1949) (Owner of land filed inventory in prior tutorship proceedings stating that he owned undivided one-half interest. In later action for oil royalties owner not estopped to claim in excess of one-half interest.); *Mullins v. Shrewsbury,* 60 W Va 694, 55 SE 736 (1906) (Widow, as guardian for children, petitioned for, and was granted, authority to sell lands which she alleged her husband owned at death. Widow received dower. Widow now claims the lands are her own alleging that the deed she gave her husband was void. Held: allegation was evidentiary admission only.); *In re Smith's Will,* 175 Misc 545, 24 NYS2d 233, opinion adhered to on reargument 175 Misc 688, 24 NYS2d 704 (1940) (Testatrix executed first will in 1928 and a second in 1937. She allegedly revoked the first will a few minutes after executing second. Contestant successfully attacked the second will on ground of lack of testamentary capacity. Proponent of the first will sought to establish that the 1937 revocation was invalid because of lack of testamentary capacity. Held: contestant in first action is not estopped to deny that testatrix was without testamentary capacity at the time); *Themper v. Themper,* 132 Conn 547, 45 A2d 826 (1946) (Husband's suit for divorce. Wife's defense: insanity. In prior action wife sued husband for alleged misappropriations. Husband's defense in prior action: insanity of wife. Held: Husband not precluded by his allegations and evidence in prior action, but admissible as evidentiary admissions).

I shall now consider the alleged inconsistent positions taken by the present plaintiffs in the two cases

in which they were involved. The complaint in the action brought by plaintiffs against the Bunyeas alleged that plaintiffs, for a valuable consideration, hired the Bunyeas "as a commercial carrier" to tow plaintiffs' trailer; that the Bunyeas undertook to do so, and that the Bunyeas hired plaintiff, Edward Jarvis, to assist in driving the towing vehicle but that the vehicle was under the exclusive control and direction of the Bunyeas. By the denials in their reply to the allegations in the Bunyeas' counterclaim, the plaintiffs further defined their position. In effect, the counterclaim alleged that the Bunyeas were employed by plaintiffs not as a commercial carrier but in consideration of the promise of plaintiff, Edward Jarvis, to pay for all necessary gas and oil used on the trip and his further promise to secure access for himself and Robert Bunyea to certain restricted hunting areas in Deschutes county. These allegations are denied in the reply. The denial may be regarded as a re-assertion of the position taken in the complaint, i.e., that in towing the trailer not only was Robert Bunyea in control of the vehicle, but that the towing was being done pursuant to a bailment contract for which plaintiffs were charged a contract price.

Plaintiff's allegation that Robert Bunyea was in control undoubtedly was intended to support the claim that the latter breached his duty to exercise care in the operation of the vehicle and to negative the possible defense of contributory negligence which might have arisen out of the fact that Edward Jarvis was driving the towing vehicle. The allegations that the Bunyeas operated the truck as a commercial carrier and that the hiring was for a valuable consideration were probably intended to lay the foundation for the claim that the Bunyeas' duty to plaintiffs was greater

that that of a gratuitous bailee, and that the Bunyeas had either the duty of a common carrier or that of a bailee for hire.

Taking the pleadings as a whole it is fair to interpret them as the equivalent of an assertion by plaintiffs that the Bunyeas were "carrying property for a charge." For the purposes of the present case I shall assume that the plaintiffs' pleadings contained the latter assertion. In the present action the plaintiffs purported to show by the testimony of Elsie Bunyea that they did not employ the Bunyeas as commercial carriers and that the money consideration paid for the towing was intended only to cover the cost of gas and oil. Mrs. Bunyea testified that "the arrangement was whatever the cost of going out there, why Mr. Jarvis would pay and take my husband hunting because the next day was the hunting season." She explained that by "expenses" she meant "gas and oil."

Thus it will be noted that the facts which plaintiffs attempted to establish by Mrs. Bunyea's testimony were essentially the same facts which plaintiffs' denied in their reply to the counterclaim in the previous action. In a strict sense plaintiffs' stands in the two actions were inconsistent. However, the allegations made in the previous action were not, as has been indicated, purported assertions of truth but merely propositions which plaintiffs hoped to prove and, in the custom of the profession, plaintiffs phrased the complaint so as to present their strongest possible case, even though the expectation of proving the allegations was probably slight, or even non-existent. But even conceding that the two positions are contradictory, I would hold that plaintiffs are not now precluded by the allegations in their pleadings in the former action. *Lowery v. Zorn,* 184 La 1054, 168 So 297 (1936).

The allegations made in the first action may, however, be considered as evidential admissions.

Defendant's third ground for attacking the trial court's findings is that plaintiffs are bound by judicial admissions made in the present cause. As observed above, the judicial admission is to be distinguished from an evidential admission which I have just discussed. McCormick, Evidence (1954), p. 504 defines a judicial admission, as follows:

> "* * * Judicial admissions are not evidence at all, but are formal admissions in the pleadings, or stipulations, oral or written, by a party or his counsel which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."

See also, 9 Wigmore, Evidence (3rd ed 1940) §§ 2588 et seq.

A judicial admission may also be made through a party's testimony. In *Morey, Administratrix v. Redifer et al.*, 204 Or. 194, 214, 264 P2d 418, 282 P2d 1062 (1955), we said that:

> "* * * When a party to an action or suit * * * testifies deliberately to a concrete fact, not as a matter of opinion, estimate, appearance, inference, or uncertain memory, but as a considered circumstance of the case, his adversary is entitled to hold him to it as a judicial admission."

See, McCormick, Evidence (1954) § 243; Note, Evidence—Party's Testimony as Judicial Admission, 5 W Res L Rev 398 (1954).

In the case at bar the plaintiffs did not appear as witnesses. However, their counsel entered into an oral stipulation in open court for the record, summarizing the testimony which plaintiffs would have given if they had been personally present. It is important to note

that the stipulation was made after plaintiffs' counsel had elicited from Mrs. Bunyea the testimony, which we have summarized above, purporting to show that the trip taken by plaintiff, Edward Jarvis, and the insured, Robert Bunyea, was in the nature of a joint enterprise. The substance of the stipulation must be pieced together out of the colloquy between counsel as each interrupted the other in the course of attempting to set the limits to the admission. The stipulation was made with reference to the pleadings in the former case. The pertinent parts of the colloquy were as follows:

"MR. JOHANSEN: * * * I believe that counsel for the plaintiffs * * * will stipulate that the facts set forth in their Complaint are the facts to which they would testify if they were personally present to testify

* * * * *

"MR. JOHANSEN: * * * Now, excepting that such matters as might be considered conclusions of law rather than fact would not be stipulated to according to counsel. It that carrect?

"MR. McNUTT: That is correct, Your Honor, and the same stipulation as to the—

"MR JOHANSEN: (Interposing.) And, he also asked the same stipulation regarding Mr. and Mrs. Bunyea's Answer and Counterclaim.

"But, I think that he has had personal testimony in that regard from Mrs. Bunyea. Now, I have some difficulty in my own mind conceiving of what would be a stipulation of fact or of testimony of a fact in the Complaint and what would be considered a conclusion of law because I think sometimes when we get into the area of discussing things as a valuable consideration, the matters of commercial carriers and things of that nature, why, we have a mixed question of fact and law.

"I think that counsel has some reservations as to what he would be willing to stipulate to as a

fact, particularly with reference to the allegations in Paragraph III of the Deschutes County Complaint.

"Is that correct, Mr. McNutt?

"I think it would be incumbent upon him to state there what he considers as a fact and what he considers as conclusions of law.

"MR. McNUTT: In trying to dispose of the case as expeditiously as possible, the plaintiff would stipulate that if Mr. or Mrs. Jarvis were called as a witness in this case, they would testify to those facts included in Paragraph III of the Deschutes County Complaint, which is Plaintiffs' Exhibit B, as follows:

"That on or about the 28th day of September, 1956, the plaintiffs hired the defendants to tow the said trailer containing the aforesaid furniture, furnishings and personal effects from Winchester Bay, Oregon, to Madras, Oregon.

"MR. JOHANSEN: They would testify if they were here that they were supposed to pay fifty dollars to Mr. Runyea?

"MR. McNUTT: Yes.

"MR. JOHANSEN: For the service in transporting the trailer? That would be their testimony, is that correct?

"MR. McNUTT: Yes. * * * * * And, in going on with the facts—That on said date, the said defendants—and I will insert here—for fifty dollars paid to them by the plaintiffs—I have one change fifty dollars—to be paid to them by the plaintiffs, undertook to tow said trailer behind the defendant's 1950 Ford one-half ton pickup.

"I guess that is all that is material, isn't it? It is the change you wanted?

"MR. JOHANSEN: Well, getting back to the element which is a little difficult because in your preferred reading of it, you excluded the 'valuable consideration' and the 'commercial carrier' aspect.

"MR. McNUTT: Yes, I call them conclusions and I will stipulate that fifty dollars was to be paid. I am willing to stipulate, if you desire that, counsel.

"MR. JOHANSEN: We . . ., I am willing, Your Honor, to agree, but that the Court may consider whether these conclusions are conclusions or whether they are facts which have been, by the Judgment, determined and therefore evidence foreclosed."

The substance of the stipulation is that plaintiffs hired the Bunyeas for the sum of $50 to tow their trailer. The principal issue before the court was whether the Bunyeas were, under the circumstances, "carrying property for a charge." Does the stipulation amount to an admission of that fact?

The manner in which the stipulation was framed makes it evident that plaintiffs' counsel was willing to concede only that the Bunyeas were hired to haul the trailer for a stated amount. He limited the language of the stipulation quite obviously to avoid the conclusion that the arrangement constituted a "carrying of property for a charge." The omission of the words "commercial carrier" and "valuable consideration" in reciting from, and in adopting, the language of the complaint evidences this purpose. Further, the insistence on the part of plaintiffs' counsel that the recitation of a joint enterprise which appeared in the counterclaim be included in the stipulation quite clearly indicates that he intended to incorporate into the stipulation the idea that, although $50 was agreed to be paid, the arrangement was not one for profit but was instead, as the findings of fact express it, "a mutually advantageous trip" and that "both Edward Jarvis and Robert Bunyea contributed something toward the expenses of the trip by way of either cash, equipment or personal assistance."

Plaintiffs' counsel's willingness to concede that the sum of $50 was agreed upon as the sum to be contributed by plaintiffs can be explained by the fact that Mrs. Bunyea had already testified that the Jarvises were to pay only the "expenses." Her testimony was as follows:

"Q. What was [sic] the arrangements for towing this trailer of the Jarvis'?

"A. Well, my husband went down to Winchester Bay and picked it up and they started out for Madras. And, the arrangement was whatever the cost of going out there, why, Mr. Jarvis would pay and take my husband hunting because the next day was hunting season.

"Q. You said whatever the cost was, could you tell us whether or not any certain items were to be for cost?

"A. Well, we couldn't figure definitely but we figured it was approximately fifty dollars.

"Q. All right. Now, what do you mean by 'cost'? Do you mean depreciation and profit?

"A. Gas and oil.

"Q. Was gas and oil the only things that he was to pay?

"A. Yes. Well, just the expenses of going out there, without looking for any breakdowns or anything. That would be as near as we could figure it out. It takes quite a bit of gas to tow one of those big trailers.

"Q. Was there any other matters that induced your husband to go on this trip?

"A. Yes, the hunting deal.

Considering the stipulation in the circumstances under which it was made it did not constitute a judicial admission that the trailer was hauled "for a charge" in the sense in which that term of the policy is usually construed.

To say that plaintiffs purported to admit that the Bunyeas were hired for the purpose of "carrying prop-

erty for a charge," the very question in issue, would fly in the face of the realities of this law suit. Plaintiffs' counsel had no chance of bringing his case outside of the exclusionary language of the policy unless he could establish that the Bunyeas were not hired in the sense of having been employed as a carrier to transport the trailer. He attempted to prove that the Bunyeas were "hired" in the sense that they were solicited by and became engaged with plaintiffs in a common enterprise, the parties combining their finances and efforts in order to get to the deer hunting country in central Oregon. Mrs. Bunyea's testimony was intended to show that this was the meaning which the plaintiffs and the Bunyeas attached to the "hiring" of the Bunyeas to tow plaintiffs' trailer.

The word "hire" need not necessarily be interpreted to mean the employment of a bailee for hire as distinct from the engagement of another to furnish and use his chattel in a joint enterprise. To force such a limited meaning upon plaintiffs and then bar them from recovery on the basis of that restricted meaning would be employing the principle of judicial admissions in the worst kind of legalistic arbitrariness. A judicial admission is made only if the meaning intended to be conveyed by the evidence or pleading runs counter to the proof which the party must adduce to establish his case. "It is of the nature of an admission, plainly, that it be by intention an act of waiver, relating to the opponent's proof of the fact, and not merely a statement of assertion or concession, made for some independent purpose." 9 Wigmore, Evidence (3rd ed 1940), § 2594, p. 596.

What has been said with reference to the stipulation in lieu of plaintiffs' testimony is also apropos

with respect to the introduction into evidence of the pleadings filed in the earlier case arising out of this accident in which the Bunyeas were the defendants. At the beginning of the trial of the present case plaintiffs introduced into evidence all of the pleadings in the previous case. These pleadings included, of course, the complaint in which plaintiffs alleged that the Bunyeas were hired as commercial carriers and the reply denying the Bunyeas' answer alleging a common enterprise. But again, to say that these assertions that the Bunyeas were commercial carriers must be taken as judicial admissions would be to attribute to that doctrine a purpose which it was never intended to serve in the trial of cases.

In the foregoing discussion of the applicability of the judicial admissions principle I have assumed that the matters alleged to have been judicially admitted were factual rather than legal conclusions. However, the averment that "plaintiffs, for a valuable consideration, hired defendants as a commercial carrier" to tow plaintiffs' trailer may be regarded as the statement of a legal proposition rather than a statement of fact. The principle of judicial admissions applies only to admissions of fact; the "admission" or statement of a legal conclusion does not preclude the proof of facts establishing a contradictory legal conclusion. *Snittjer Grain Co. v. Koch,* 246 Iowa 1118, 71 NW2d 29, 32 (1955); *Construction Co. v. Brotherhood,* 168 Ohio St 8, 10-11, 151 NE2d 12 (1958); McCormick, Evidence (1954), § 242; 4 Wigmore, Evidence (3rd ed 1940) §§ 1058, 2588-2590; 9 Wigmore, Evidence (3rd ed 1940) §§ 1058, 2588-2599.

I have assumed that not every contribution made for the transportation of goods constitutes a "carrying of property for a charge" within the meaning of

the exclusion clause of the endorsement. I have found no case interpreting an identical exclusion clause.① However, there are a number of cases interpreting exclusion clauses relating to the use of an automobile "in carrying of *persons* for a consideration," or similar terms. See, Appleman, Automobile Liability Insurance (1938) pp. 153, 157-168. In some cases it is held that such a clause is not applicable unless the vehicle is being used habitually in carrying persons for consideration or a charge. *Maringer v. Bankers Indemnity Ins. Co.*, 288 Ill App 335, 6 NE2d 307 (1937); *Commercial Union Assur. Co. of London v. Hill*, 167 SW 1095 (Tex Civ App 1914). See, *Crowell v. Maryland Motor Car Ins. Co.*, 169 N C 35, 85 SE 37 (1915); *O'Donnell v. New Amsterdam Casualty Co.*, 50 R I 269, 146 A 410, 770 (1929). The majority of the cases are to the contrary and these cases present the more convincing construction of the exclusion clause. *Myers v. Ocean Accident & Guarantee Corporation*, 99 F2d 485, 491 (4th Cir 1938); *State Farm Mut. Automobile Ins. Co. v. Self*, 93 F2d 139 (5th-Cir-1937); *Sleeper v. Massachusetts Bonding & Ins. Co.*, 283 Mass 511, 186 NE 778, 779 (1933); *Laliberte v. Mutual Casualty Co.*, 69 R I 431, 34 A2d 670 (1943); *Mittet v. Home Ins. Co.*, 49 S D 319, 207 NW 49, 52 (1926). However, even in the latter cases not every carrying of persons in which the owner receives money is regarded as a carrying of persons "for consideration" or "for compensation" or "for a charge." These clauses are generally construed not to be operative where the trip is undertaken as a joint enterprise or where there is a

---

① Cf., American Etc. Co. v. Provencher, 90 N H 16, 3 A2d 824 (1939), where the policy excluded coverage if the vehicle was "used for the transportation of persons, material or merchandise for others for any consideration whatever." It was established that the insured was carrying persons for a charge. See also, State Automobile Insurance Ass'n. v. Kooiman, 143 F Supp 614 (D.C. S.D. 1956) (involving a policy limiting coverage to use "exclusively for hauling the assured's own farm equipment and products").

sharing of expenses for a pleasure drive. Thus in *Ocean Accident & Guarantee Corporation v. Olson,* 87 F2d 465, 467 (8th Cir 1937), the court said:

"* * * The authorities, without dissent so far as we can find, hold that contribution by a person to the expense of a trip by automobile for the joint pleasure of the party, where the parties are friends or are related, is not 'consideration' or hire within the meaning of policy provisions such as those now before us. On the other hand, where the parties are strangers and the relation is a business one only, or the contribution is not related to the expense of the trip or exceeds the amount of the expense, the arrangement constitutes a carrying 'for a consideration' within the meaning of such policies."

See also, *United States Fidelity & Guaranty Co. v. Hearn,* 233 Ala 31, 170 So 59 (1936); *Porter v. Employers' Etc. Corp., Ltd.,* 40 Cal App2d 502, 104 P2d 1087 (1940); *Park v. National Cas. Co.,* 222 Iowa 861, 270 NW 23, 27-28 (1936); *In re Boyer's Estate,* 285 Mich 80, 280 NW 117 (1938); *Beer v. Beer,* 134 Ohio St 271, 16 NE2d 413, 118 ALR 388 (1938); Annotations: Scope and application of exception as regards carrying passengers in policies of automobile insurance, 95 ALR 150 (1935), 118 ALR 393 (1939), 147 ALR 632 (1943).

A similar interpretation may be made of the clause before us excluding coverage where the vehicle is used for carrying *property* for a charge. If, in the instant case, the plaintiff, Edward Jarvis, and Robert Bunyea were engaged in a joint enterprise and the trailer was being hauled as an incidental part of a hunting trip with each party contributing something to the expenses of the trip, the payment by plaintiffs of the sum of $50 for the estimated actual expenses

would not constitute a payment of a "charge" within the meaning of the exclusion clause. There was sufficient evidence to support this view of the transaction and the trial court so concluded. Under the circumstances we are not at liberty to substitute our judgment for that of the trier of fact, in this case the trial judge.

What has been said above with reference to the transportation of passengers for consideration is not to be confused with a similar problem where the question presented is whether a person is a guest under the guest statute. (See *Johnson v. Kolvos*, 224 Or 266, 355 P2d 1115 (1960)). The distinction is recognized in several cases. *Beer v. Beer*, supra; *Jensen v. Canadian Indemnity Co.*, 98 F2d 469, 470 (9th Circuit 1938), Cert. Den., 307 US 622, 59 S Ct 793, 83 L Ed 1500; *State Farm Etc. Ins. Co. v. Superior Court*, 47 Cal2d 428, 304 P2d 13, 15 (1956); *Porter v. Employers' Etc. Corp., Ltd.*, supra; *Western M Co. v. Bankers I. Ins. Co.*, 10 Cal2d 488, 75 P2d 609 (1938). See, Note, Insurance: Carrying Passengers for Consideration Within Meaning of Automobile Liability Policy, 26 Calif L Rev 503 (1938).

Defendant assigns as error the failure of the trial court to hear and determine defendant's objections to plaintiffs' proposed findings of fact. The trial court entered judgment after plaintiffs' proposed findings and defendant's objections together with a request for different and additional findings had been filed. Defendant contends that a hearing should have been held on his requests for findings. For this he relies upon ORS 17.430 which reads in part as follows:

" * * * If objections are filed to such findings and request is made for other different or additional findings, such objections and request

shall be heard and determined by the court within 50 days from the date of filing of the findings, and not thereafter, and if not so heard and determined within that time the objections and request shall be conclusively taken and determined denied."

It was not error for the trial court to enter judgment without holding an actual hearing on the objections to the adversary's findings and requests for additional or different findings. I interpret the statute to mean that it is within the discretion of the trial court to determine whether a hearing should be held where such objections and requests are made. If the judgment is entered without a hearing and the objections and requests are denied, the objector has made his record for an appeal.

Defendant relies upon *Twin Falls Bank v. City Electric et al.*, 218 Or 542, 346 P2d 84 (1959), but that case is clearly distinguishable because there the judgment was entered before the objector had filed his objections. Certainly ORS 17.430 was intended to require the trial judge, in formulating his findings, to *consider* objections timely made. However, the statute was not intended to require a *hearing* upon such objections where the trial judge decides that a hearing is not necessary.

I would affirm the judgment of the lower court.

SLOAN, J., joins in this dissent.